STATE, *ex rel.* W. G. KENNEDY, v. W. V. KNOTT, State Treasurer.

166 So. 835.

Division B.

Opinion Filed March 23, 1936.

A. Frank Katzentine, W. Sanders Gramling, John C. Gramling, Carrington Gramling and Waller & Pepper, for Relator;

Cary D. Landis, Attorney General and H. E. Carter and John L. Graham, Assistants, for Respondent.

TERRELL, J.—This is an original proceeding in mandamus. The alternative writ commands the respondent, as State Treasurer and Insurance Commissioner, to issue a license as insurance agent to relator, W. G. Kennedy, or to show cause on a day certain why he refuses to do so. There was a motion to strike portions of the alternative writ on the ground that they introduced collateral issues that were without relevance to the act sought to be coerced. There was also a motion to quash and the cause comes on now to be disposed of on both the motion to strike and the motion to quash.

The first question argued is whether or not mandamus is the proper remedy to require the State Treasurer as Insurance Commissioner to renew relator's license, he being an insurance agent and required by Chapter 14741, Acts of 1931, to secure a license for that purpose.

Section 2 of Chapter 14741, as amended by Chapter 17069, Acts of 1935, provides for the licensing of insurance agents and solicitors. If the State Treasurer, as Insurance Commissioner, declines to issue a license or certificate to an insurance agent or solicitor on compliance with the terms of this Act, mandamus may be resorted to to require per-

formance of that duty. State, *ex rel.* Tulledge, v. Hollings-worth, 103 Fla. 801, 138 So. 372; State, *ex rel.* Williams, v. Whitman, 116 Fla. 196, 150 So. 136, 156 So. 705.

The respondent does not challenge the correctness of the law as thus stated but alleges that he refused renewal of relator's license on the ground that a parital inquiry into his (relator's) books revealed circumstances pointing to an unlawful division of commissions on his part and that he was using his commission for other illegal purposes which were not explained.

Section 2 of Chapter 14741, Acts of 1931, as amended by Section 5 of Chapter 17069, Acts of 1935, requires all insurance agents and solicitors to secure a license from the State Treasurer and defines the requirements prerequisite to the securement of said license. Licenses so secured expire on September 30 of each year and must be renewed on October 1 unless cancelled for cause. Relator had been in the insurance business for years and was renewing his license.

Section 5 of Chapter 14741, Acts of 1931, prescribes the method for the State Treasurer to pursue to investigate charges or suspicion of misconduct on the part of insurance agents or solicitors and in the event they are found to have been guilty of using their license for the purpose of secur-ing rebates or commissions on insurance or dividing com-missions or for other unlawful purposes stated in the Act they may be suspended for thirty days and if no answer is made to the suspension within that time the license shall be revoked.

These two sections of the statute in other words provide a complete and independent method within themselves for licensing and for suspending insurance agents and solicitors. The two methods are not to be confused, neither can the

method for suspending be employed as a reason for refusing a license unless the investigation required therein has been completed and a suspension made as the result of such investigation and the time has lapsed within which a court may be petitioned to adjudicate the validity of said suspension in the manner provided by the Act.

The State Treasurer as Insurance Commissioner, should have issued a license to the relator on his compliance with the terms of Section 2, Chapter 14741, Acts of 1931, as amended by Section 5 of Chapter 17069, Acts of 1935. The fact of having issued the license would have in no sense interfered with the investigation in progress under Section 5 of Chapter 14741, Acts of 1931, nor with the suspension authorized thereunder. Such suspensions are in no sense authorized until the investigation is concluded as the law directs and the Insurance Commissioner has reached a definite conclusion that the agent is guilty of the charge or charges against him and this conclusion must be based on positive proof secured on a full and complete investigation as the law directs. It cannot rest on a partial inquiry or inconclusive circumstantial evidence.

Preliminary to making the investigation authorized by Section 5 of Chapter 14741, it is clearly contemplated that a complaint stating the charge against the agent or solicitor shall be filed and served on him. If he fails to make answer to the complaint within thirty days it shall be considered *prima facie* well founded and his license suspended. If he fails to answer within an additional period of thirty days his license shall be revoked. He is then given thirty days to petition any court having jurisdiction to require the Insurance Commissioner to show cause why his license should not be reinstated. While the statute authorizes the Insurance Commissioner to inspect the books of the agent or so-

licitor he is not authorized to suspend his license until he has given the agent or solicitor and the company or companies notice and opportunity to be heard upon satisfactory proof in his defense of the charges against him.

The record here discloses that the investigation authorized was not completed and it is not shown that relator was given the opportunity warranted by the statute to explain the charges against him. It is not made to appear in other words that the provision of the statute with reference to suspension of the license was substantially complied with, and consequently the basis on which the license was refused, was insufficient.

The second and third questions challenge the constitutional validity of Section 5 of Chapter 14741, Acts of 1931. Courts will not adjudicate constitutional questions if there are other grounds on which the cause in litigation may be disposed of. We have decided to adjudicate the constitutional question raised in this case because it is determinative power of the Insurance Commissioner to inspect the books of relator which is a material part of the investigation being conducted by him. The essential part of Section 5 challenged is as follows:

The State Treasurer may, upon his own motion, and must, upon a written complaint signed by a citizen of this State and filed with the State Treasurer, inquire into any alleged illegal or improper conduct of any licensed insurance agent or solicitor in this State. In the prosecution of such inquiry such agent or solicitor shall, whenever so required by the State Treasurer, cause his books and records to be opened for inspection for the purpose of such inquiry."

It is contended that that part of the Act as above quoted requiring the books and records of relator to be opened to the inspection of respondent is violative of the State and

Federal Constitutions in that it authorizes unreasonable searches into the papers and effects of relator.

It is no longer open to dispute that the business of insurance so directly affects the public that it is generally conceded to be affected with a public interest and being so is subject to regulation and control by the Legislature which includes the power to license and regulate the agents through whom such business is conducted. See annotation to Northwestern Nat. Ins. Co. v. Fishback, 130 Wash. 490, 228 Pac. 516, in 36 A. L. R. 1513, where state and federal cases are collected.

The prohibition in the Constitution against searches and seizures does not protect all searches and seizures. It is restricted to *unreasonable* ones. It has been held that the right to search or inspect the books and records of persons and corporations engaged in a business affected with a public interest does not constitute an unreasonable search or seizure. State, *ex rel.* Davis, v. Rose, *et al.,* as Florida Real Estate Commission, 97 Fla. 710, 122 So. 225; Hughes v. State (Tex.) 149 S. W. 173; Karr v. Baldwin, 57 Fed. (2d) 252; Bartlett-Frazier Co. v. Hyde, et al., 56 Fed. (2d) 245; Certiorari denied, 290 U. S. 654, 54 Sup. Ct. Rep. 70, 78 L. Ed. 567.

In the last cited case all the questions relied on by relator and more were raised and adjudicated contrary to his contention. We have examined these cases and approve the rule as therein accounted. It would be difficult to find a business that more vitally affects the public interest than the insurance business and without the right to inspect the books of persons engaged in that business the Insurance Commissioner would be very much hampered in regulating it as the law directs.

We have examined the cases cited by relator in support

of his contention but they all relate to legislative acts or efforts on the part of administrative or other officers seeking to pry into the personal affairs of individuals or corporations to secure incriminating evidence against them or to make fishing expeditions for illegal purposes and are not, therefore, in point with the case at bar. Such inquisitions are clearly prohibited by the State and Federal Constitutions but the constitutional inhibitions invoked have no application to cases or acts in which a public official seeks to examine or audit the books of a person or corporation transacting a business affected with a public interest so long as the examination is limited to securing information for that purpose.

The examination is limited strictly by the confines of the statute and can be employed for no other purpose. In order that all parties be advised fully of the scope of the investigation and that the examination be limited within the contemplation of the law the agent or solicitor being investigated should be served with a copy of the charges against him.

It follows that the motion to quash must be and is hereby overruled.

ELLIS, P. J., and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.