W. V. Knott, State Treasurer, as Insurance Commissioner
of the State, v. State *ex rel.* Paul B. Hanks.

192 So. 472
Division A
Opinion Filed November 21, 1939
Rehearing Denied January 2, 1940

*George Couper Gibbs,* Attorney General, and *John L. Graham,* Assistant Attorney General, for Plaintiff in Error;

*Wm. J. Oven, Wm. J. Oven, Jr.,* and *B. M. Skelton,* for Defendant in Error.

THOMAS, J.—Section 5 of Chapter 14741, Laws of Florida, Acts of 1931, provides that the State Treasurer may, or must when complaint is filed with him, investigate "illegal or improper conduct" of an insurance agent and shall revoke the license "upon satisfactory proof that the agent * * * has been guilty of such improper or illegal conduct or practices as to render him unfit to carry on the business or to make his continuance therein detrimental to the public interest, * * *."

After a hearing in accordance with this statute, the State Treasurer as Insurance Commissioner found Paul B. Hanks guilty of such "improper or illegal conduct or practices as to render him unfit to carry on the business (of insurance agent) and to make his continuance therein detrimental to the public interest" and revoked his license.

The order of revocation recited that among his misdeeds were: (1) signing, without authority, names of policy holders to receipts for dividends and withholding the proceeds; and (2) irregularity in handling because of personal antipathy, a dividend so that the policy holder was deprived of it.

On certiorari (West Flagler Amusement Co., Inc., v. State Racing Commission, *et al.,* 122 Fla. 222, 165 South.

Rep. 64; Degge v. Hitchcock, 229 U. S. 162, 57 L. Ed. 1153, 33 Sup. Ct. Rep. 639) the circuit court reviewed the proceedings culminating in the order of revocation and quashed it, reasoning that the word "improper" used in the Act could not be relied upon solely to define the conduct which would justify revocation but that this word was modified by "illegal." The learned judge concluded, after analyzing the various complaints, that there was insufficient evidence adduced at the hearing before the Commission to establish illegal conduct on the part of the agent.

"The common-law writ of certiorari cannot be made to serve the purpose of an appellate proceeding in the nature of a writ of error. The writ involves a limited review of the proceedings of an inferior jurisdiction. It is original in the sense that the subject-matter of the suit or proceeding which it brings before the court are not here reinvestigated, tried, and determined upon the merits generally as upon appeal at law or writ of error. Basnet v. City of Jacksonville, 18 Fla. 523; Brinson v. Tharin, 99 Fla. 696, 127 South. Rep. 313, text 316."

These and other authorities of similar import were cited in the opinion of the circuit judge to chart the course he was to follow in his consideration of the controversy. He observed that the evidence introduced at the hearing before the State Treasurer as Insurance Commissioner would be: "examined only to ascertain if a palpable abuse of power to determine the controverted facts was disclosed, and whether there was any evidence to support the findings, or whether anything occurred at the trial to show a lack of jurisdiction or the non-observance of any essential requirement of law in the exercise of jurisdiction and upon certiorari the case will not be tried upon its merits by the court issuing the writ as upon appeal."

We must determine, then, whether, in his study, within the restricted scope of the record of the inquest before the Commissioner he committed a palpable abuse of authority in deciding that the conduct of relator was not of that character which would subject him to the penalty of revocation of his license.

We think the manner of dealing with his clients in the signing of receipts without authority and in attempting, because of personal animosity, to defeat recovery of dividends, by asking the company he represented to disallow rebates, was subject to severe criticism.

In his lucid digest of the various transactions, the court felt that in at least one instance, where relator advised that an unearned dividend had not been obtained knowing the information to be untrue, the relator's treatment of the policy holder was improper and unjust because of the duty he owed his company and the fair treatment he should have afforded his client.

One engaged in the business of writing policies of insurance may not be relieved of a responsibility to deal justly with those persons who become his clients although in his transactions with them he is the agent of the other contracting party, the insurance company. Under the statute here considered, an inquiry may be instigated upon a written complaint presented by any citizen of this State.

We have examined the authorities cited by relator to, support his position that the word "improper," as used in the Act, is modified by the word "illegal" but we fail to comprehend their analogy to the one at bar. If the Act empowered the Insurance Commissioner to revoke a license because of improper or illegal conduct and placed no further limitation on this authority there might be some weight to this contention but this is only a partial statement of the authority

delegated to him. The demeanor justifying the penalty is *"such* improper *or* illegal conduct *as to render him unfit to carry on the business or to make his continuance therein detrimental to the public interest."* (Italics supplied.)

The public interest mentioned in the Act is significant when viewed in the light of the decision in State *ex rel.* Kennedy v. Knott, 123 Fla. 295, 166 South. Rep. 835, where it was said:

"It is no longer open to dispute that the business of insurance so directly affects the public that it is generally conceded to be affected with public interest, and, being so, is subject to regulation and control by the Legislature, which includes the power to 'license and regulate the agents through whom such business is conducted.' " 166 South. Rep., text-837.

When the quoted language of the statute is considered in its entirety the attack upon it loses its force No opportunity is given the Commissioner to employ one of the synonyms of "improper" and capriciously conclude that one engaged in the business can be cast out. The disjunctive is used and the language means quite clearly that it is not alone sufficient to show improper or even illegal conduct but that one or the other shall be of such degree as to render the agent unfit or his activities adverse to public interest.

Within those restrictions the Commissioner could not give play to whim or caprice nor could the agent become a victim of arbitrary power.

Despite our reluctance to interfere with the able opinion of an able judge, we are constrained to reverse the judgment.

It is so ordered

TERRELL, C. J., WHITFIELD and CHAPMAN, J. J., concur.

BROWN and BUFORD, J. J., dissent.

BROWN, J. (dissenting).—I think the statute is unconstitutional. It gives no standard or creation of which constitutes "improper" conduct which unfits a man to carry on the business of an insurance agent, or such conduct as would be detrimental to the public interest. It seems to me that Judge Love's decision should be affirmed.