ALLEN, Judge.
Appellant, plaintiff below, is appealing from a final decree which held inter alia that land leased and occupied by plaintiff was used exclusively for its private business purpose and not for a public or municipal purpose and was therefore not exempt from taxation. Said decree further directed the tax assessor to back assess plaintiff’s property for the years 1957, 1958, 1959 and 1960 as non-exempt property.
This appeal was originally filed in the Supreme Court but was transferred to this court for the reason that the record did not present a cause within the direct appellate jurisdiction of the Supreme Court. The Supreme Court found that the final decree did not construe a controlling provision of the Constitution nor did it pass directly on the validity of a statute.
In March of 1955, Hillsborough County Port Authority leased to River-Gulf Terminal, Inc., for ten years, a parcel of unimproved submarginal waterfront land in Tampa then and still owned by the Authority, whereon to construct a barge line terminal. River-Gulf was granted options to extend the lease for two additional ten year terms at increased rentals during each term. The rent reserved was $14,650 for the original 10 year term, provided River-Gulf should construct a bulkhead on the land for the Authority, otherwise such rent was to be $64,650 if the Authority should construct the bulkhead at its expense. However, should the Authority elect not to construct the bulkhead, and should River-Gulf also elect not to do so, the lease was to terminate. The rent reserved for the second term was $23,000 and $27,000 for the third term should the options to renew be exercised. In June of 1955, River-Gulf sublet a portion of the leased land to appellant, Illinois Grain Corporation, for the same time periods under the prime lease. Illinois was to pay River-Gulf, as rent, an amount equal to Illinois’ pro-rata share of the rent reserved in the prime lease based upon an apportionment of the land area, and, additionally, was to pay one-third of River-Gulf’s bulkhead construction costs.
River-Gulf improved the land by filling and bulkheading it resulting in a deep water approach to the bulkhead and Illinois built a grain elevator as a permanent structure on its subleased portion of the land according to plans approved by the Authority. All improvements were completed in 1956 and revert to the Authority at the expiration of the prime lease.
In 1957, the county tax assessor and the City of Tampa assessed the grain elevator together with the machinery and equipment installed therein, but not the land on which it stands, for ad valorem taxation for that year, classifying same as tangible personal property described as improvements on leased land. It was assessed to Illinois as owner. Illinois brought suit contesting the legality of the 1957 assessment and a like assessment for 1958 on two grounds: (1) that the elevator with fixtures therein constituted real property as defined by § 192.-02, F.S.A., and was not taxable as personal property as such is defined in § 200.01, F.S.A., and (2) that, since title to the land is held by the Authority, the permanent improvements thereon are exempt from ad valorem taxation by provisions in the act creating the Authority.
Defendants’ motion to dismiss was granted and from the decree of dismissal Illinois appealed to the Supreme Court, which court transferred the cause to this court. This court reversed, holding that the grain elevator was real property under § 192.02 and that its assessment as tangible personal property described as improvements on leased land was invalid. The question of exempt status was not considered. However, this court also held that the machinery and equipment installed to operate the elevator did not constitute fixtures as a part of the land because of a provision in the prime lease from the Authority to River-Gulf that the title thereto should remain in the tenant upon, termination of the lease. Thus, that part of the 1957 and 1958 assessments *331 classifying the machinery and equipment (as opposed to the elevator itself) as personalty was held valid. Illinois Grain Corp. v. Schleman, Fla.App. 1959, 114 So.2d 307.
Thereafter, the assessor revised his assessment for 1959 by classifying the grain elevator as real property, although it remained assessed to Illinois. He described the elevator as “Improvements erected upon premises leased from Hillsborough County Port Authority, exclusive of land and bulkhead.s” (emphasis added) followed by a description of the subleased land which was not assessed. He also made identical assessments for back taxes for 1957 and 1958 as permitted by § 193.23, F.S.A.
The instant suit was brought by plaintiff against the Tax Collector and Comptroller on November 23, 1959, and during its pend-ency the elevator was assessed for 1960 taxes in the same manner as for the three previous years as above described. Illinois filed a supplemental complaint to attack the 1960 assessment.
Plaintiff alleged that these assessments were illegal and invalid in that improvements such as the grain elevator became a part of the freehold and must be assessed with the land as a part of the whole parcel of realty; and that, since the land is owned by the Authority whose property is exempt from ad valorem taxation, the grain elevator which has become a part of it is likewise not taxable. Defendants denied this allegation.
Defendants then alleged “that the special interest of the lessee may be separately valued and assessed apart from the bare land and bulkheads,” under a provision in the prime lease from the Authority and one in the sublease from River-Gulf for payment of taxes by the respective lessees therein. Defendants made the Authority a party to the suit and served upon it and the plaintiff (Illinois) a counterclaim alleging that when the land was leased and thereafter improved for private business purposes it lost its exempt status; that the tax exemption provided for in § 20 of the Port Authority Act (Chap. 23338, Special Acts of 1945) was abandoned by the lease and sublease of the land and its subsequent use for other than municipal purposes. Section 1 of Article IX and Section 16 of Article XVI of the Florida Constitution, F.S.A. were cited as controlling and it was alleged that the provisions thereof precluded exemption from taxation of the land and the elevator under Section 20 of the Port Authority Act.
Plaintiff replied to the Counterclaim alleging that it failed to state a cause of action and denying the allegations contained therein. Decree pro confesso was entered against the Authority. R. R. Walden, Tax Assessor for Hillsborough County and the City of Tampa, appeared and submitted himself to the court’s jurisdiction.
Subsequent to a final hearing, a final decree was entered granting the relief sought in the complaint. The court declared the assessments for 1957 through 1960 invalid on the apparent theory that the elevator must be considered as part of the freehold.
However, the court also granted the relief prayed for in the counterclaim and ordered the Assessor to assess the lands, as improved, subleased by Illinois as nonexempt property for the years 1957 to 1960, inclusive.
From this decree Illinois has appealed, attacking that part of the decree which directed the Assessor to assess the lands involved as non-exempt property. The inclusion of the year 1957 in the back-assessment is also challenged.
Two questions are presented:
“1. Whether or not the real property herein involved is exempt from ad valorem taxation under Section 20 of the Port Authority Act, Chap. 23338, Laws of Florida, 1945 (Special Acts).
“2. Whether or not, even if said property is non-exempt, the lower court could direct a back assessment thereof for 1957 without violating the three *332 year limitation on back assessments provided for in Section 193.23 F.S.A.”
We hold that the lower court ruled correctly in determining that the lands involved have been held, occupied and used exclusively by Illinois for its private business purposes and not for a public or municipal purpose, and that therefore said lands are not exempt from taxation. Moreover, the record amply supports the finding that the Illinois Grain Corporation is operated solely as a private commercial enterprise.
It is apparent from paragraph 6 of the prime lease between River-Gulf and the Authority that the parties contemplated the loss of the exemption provided for in the charter once the area involved became industrialized for private purposes. Said paragraph 6 reads:
“6. The premises consisting of bare land and bulkhead hereby leased are not taxable at the present time. It is understood and agreed that if said leased premises is rendered taxable during the term of this lease, Authority will pay all taxes so assessed or levied. Tenant will reimburse Authority for that portion of the taxes so paid by Authority which exceeds $506.00 per year on said leased premises.”
This provision, coupled with the fact that the Authority allowed decree pro confesso to be entered against it on defendants’ counterclaim, we construe as an abandonment by the Authority of its exemption once the area involved became industrialized for solely private purposes, a fact determination of the chancellor which we do not disturb.
Such an outcome also appears to have been contemplated by River-Gulf and Illinois. Paragraph 4 of the sublease entered into between them reads in part:
“ * * * As additional rent for the sublet premises, Grain Company shall pay to River-Gulf any and all taxes levied and assessed against any and all improvements constructed by Grain Company on the sublet premises, promptly upon demand for such payment accompanied by a statement showing the amount of such taxes, and
“Grain Company shall, in the event taxes are levied and assessed against the leased premises, reimburse River-Gulf for one-third of such taxes paid by the latter pursuant to the pertinent requirement of the prime lease. Grain Company shall be responsible for payment of all taxes levied and assessed upon its personal property kept on the premises.”
Section 20 of the Port Authority Charter, Chap. 23338, Laws of Florida, 1945 (Spec. Acts) reads:
“Section 20. EXEMPTION OF PROPERTY FROM TAXATION.
“As proper facilities for the handling of passengers, mail, express and freight are essential for the health and welfare of the inhabitants of the Port District and for its industrial and commercial development, and as the exercises of the powers conferred by this Act constitute the performance of essential government functions, and as the projects acquired or constructed under the provisions of this Act constitute public property and are used for governmental purposes, the Hillsborough County Port Authority shall be exempt from all taxation upon any and all of its projects and property, real and personal, tangible and intangible, to which it holds title, levied and assessed pursuant to the Constitution and laws of the State of Florida, by any taxing unit.”
Appellant argues that the use to which the leased premises occupied by Illinois is being put contributes significantly to the economic growth of the port of Tampa, provides considerable employment and, therefore, because the premises are owned by the Authority, serves a municipal purpose. In so serving this municipal purpose, the- argument continues, the property leased *333 by Illinois is entitled to the exemption provided for in Section 20 above, which the legislature under Article IX Section 1 of the Florida Constitution is authorized to grant. Such public purpose is purported to be one facet of the Authority’s overall scheme of enhancing the economic development of the port of Tampa. On an analogous set of facts such reasoning was rejected in the recent case of State v. Clay County Development Authority, Fla. 1962, 140 So.2d 576. A decree validating revenue anticipation certificates proposed to be issued by the Clay County Development Authority was appealed by the State. The Supreme Court held that an agreement providing that the Authority would construct and equip an industrial plant on a portion of its land to be leased to a private corporation, and providing that the Authority would finance the project through the issue of revenue certificates payable solely from the amounts to be paid by the corporation over the initial period of the lease, was invalid as a violation of the constitutional prohibition against lending the credit of the State to private interests. Article IX, Section 10, Florida Constitution.
The Court, speaking through Mr. Justice Drew, stated in its opinion at p. 580:
“Turning now to the question immediately at hand, it is crystal clear that the primary purpose to be served by the issuance of these obligations is the financing of a private enterprise contrary to the express provisions of Section 10 of Article IX of the Constitution of this State, F.S.A. The public obligation is to be incurred for the sole purpose of building and equipping this industrial plant. The fact that such building and structures will occupy only a small portion of the 1300 acres of land of the Authority is of no consequence in determining whether the purpose of improvement is incidental and falls within the ambit of our holdings in the Gate City Garage and Panama City cases. The dominant and paramount purpose is to lend the credit of the county to a private corporation to finance a private enterprise for private profit which will be under the exclusive control and in the exclusive possession of such enterprise for more than twenty-five years. The only possible public purpose which it serves is to promote the general development of the area by furnishing employment to the residents of Clay County. This is the factor which prompted the project. If we approve the issuance of bonds by the public authorities of this State to build and finance private enterprises and put such enterprises in the exclusive possession and control of such leases as is proposed to be done here, in order to alleviate unemployment and to promote the economic development of the area, then there is no limit to the extent to which the credit of the State and its authorities may be extended to private interests. In such event the constitutional provision above quoted will become meaningless.”
It is true that the instant case does not involve pledging the credit of the State or one of its political subdivisions. It does, however, involve the question of to what extent a private enterprise situated on public land can be deemed to be fostering a public purpose. In this regard the above quoted language of the Supreme Court is applicable to the facts in the instant case.
We are further of the view that the controlling precedent for our conclusion here-inbefore reached is Panama City v. Pledger, 1939, 140 Fla. 629, 192 So. 470. In that case the City of Panama City had entered into a written lease with a private corporation. Under its terms, possession of certain city-owned lands was given to the corporation for a period of fifty years with an option in the lessee to renew the lease for an additional forty-nine years and with the additional option to purchase the land for $300,-000 any time during the first fifty years. Under the agreement the corporation was to construct a public dock on a portion of the leased lands and the City was to con *334 tribute $125,000 toward the cost of such construction. The agreement also provided for construction of other public and private docks and terminal facilities at the joint expense of the parties. The corporation, after purchase of the property, was required to operate the docks as a public utility. In operating the public docks, the corporation was to pay the City a rental, but if the net earnings of the docks exceeded the amount of fixed rentals, the City had the option to accept a share of net earnings instead of rent. It was also agreed that the City should pay any taxes which might be assessed against the property.
In addition to the foregoing, the corporation also agreed within thirty months to erect a paper mill on a portion of the leased lands at a cost of not less than three million dollars. The corporation further agreed to pay the City each year a guaranteed minimum of $18,000 and to divide net earnings on the docks in excess of $18,000 a year in proportion to the amount contributed by the parties toward the cost of dock construction.
Suit was brought for the purpose of, inter alia, enjoining the county tax assessor and tax collector from assessing and collecting taxes on the land involved. The lower court issued a decree dissolving a temporary injunction and dismissing the complaint from which an appeal was taken by the City.
The City and presumably the corporation contended that the land involved was exempt from ad valorem taxation as public property intended to be used for municipal purposes within the meaning of the statutory predecessor of current F.S. Section 192.06, F.S.A. and Section 1, Article IX of the Constitution of Florida.
The Supreme Court in holding the property to be not exempt stated at 192 So. 472:
“The bill of complaint makes it clear that tracts 1 and 2 are not being used by the City or the Kraft Corporation for the contemplated dock system, but are being used for other purposes by the Kraft Corporation under the lease contract. The power to use the property is vested in the Kraft Corporation. The right or power exists for fifty years, with the option for an additional forty-nine years. The docks actually controlled and now operated by the Kraft Corporation pay an annual rental or a share of the net annual earnings thereof, provided it is greater in amount than the rental. The City of Panama City agreed by the lease to pay any taxes which might be assessed. The property is occupied by the Kraft Corporation and used by it in its said business, and the uses and purposes to which it is now being placed cannot possibly be classified as a public or municipal purpose but purely a private purpose.”
We therefore conclude that the property herein involved is not tax exempt.
Turning next to the question of whether the lower court by its decree, here appealed, entered on March 31, 1961, could properly direct the assessor to assess the lands involved as non-exempt property for the years 1957, 1958, 1959 and 1960, we hold that it could.
F.S. § 193.23, F.S.A., provides in part as follows:
“When it shall appear that any ad valorem tax might have been lawfully assessed or collected upon any property in the state, but that such tax was not lawfully assessed or levied, and has not been collected for any year within a period of three years next preceding the year in which it is ascertained that such tax has not been assessed, or levied, or collected, then the officers authorized shall make the assessment of taxes upon such property in addition to the assessment of such property for the current year, and shall assess the same separately for such property as may have escaped taxation at and *335 upon the basis of valuation applied to such property for the year or years in which it escaped taxation, * * *. But no property shall be assessed for more than three years’ arrears of taxation, * * * provided, if real or personal property be assessed for taxes, and because of litigation delay ensues and the assessment be held invalid the taxing authorities, may re-assess stick property within the time herein provided after the termination of such litigation; * * *.” (Emphasis supplied.)
In construing Chapter 9180, Laws of Florida, 1923, appearing in the statutes as Sections 925 and 926, C.G.L., the predecessor of present Section 193.23, the Supreme Court in City of Coral Gables v. Fluvia Corporation, 1939, 135 Fla. 544, 185 So. 621, held that the City of Coral Gables had the power to reassess property for the years 1928, 1929 and 1930, under the language of the statute “within the time herein provided, i. e., within the current year, next ensuing after July 23, 1936, the date of the termination of the said litigation.” The Court further stated at 185 So. 622:
“ * * * While it may not be necessary to define the exact time or period meant by ‘the current year’, it does follow and likewise is reasonable to assume that the ‘current year’ begins on the date of the termination of the litigation and ended prior to the date of the attempted reassessment here in May, 1938. * * *”
On the question here involved, F.S. 193.-23, F.S.A. is not significantly different from its statutory forerunner construed in the Coral Gables case.
Under the facts of this case, the litigation involving the assessment for the years 1957 through 1960 will not be terminated until this court’s mandate becomes final. The Assessor will then have the power to assess, for those years involved in this litigation which are more than three years in arrears, within the current year next ensuing after this court’s mandate becomes final. For the sake of clarity, the “current year next ensuing” is deemed to be within one year.
Upon a careful consideration of the record, briefs of counsel and the authorities cited therein, we fail to find reversible error. The decree appealed is therefore affirmed.
Affirmed.
SHANNON, C. J., and ODOM, ARCHIE M., Associate Judge., concur.