694 So.2d 70 (1997)
FLORIDA DEPARTMENT OF INSURANCE AND TREASURER, Appellant,
v.
BANKERS INSURANCE COMPANY, Appellee.
No. 96-3206.
District Court of Appeal of Florida, First District.
April 16, 1997.
Rehearing Denied May 27, 1997.
*71 Dennis Silverman and Daniel Y. Sumner of the Division of Legal Services, Tallahassee, for Appellant.
Douglas A. Mang, Wendy Russell Wiener, Connie Jo Pecori, and Robert E. Wolfe, Jr. of Mang Law Firm, P.A., Tallahassee, for Appellee.
BENTON, Judge.
The Department of Insurance and Treasurer (Department) issued investigatory subpoenas and a notice and order of investigatory hearing, which it later amended, to Bankers Insurance Company (Bankers) and certain individuals employed directly or indirectly by Bankers. When Bankers and all but one of the individuals refused to appear or honor the subpoenas, the Department filed in circuit court an emergency petition for enforcement of agency investigative hearing orders and subpoenas. The Department now appeals the circuit court's order denying petition for enforcement. We reverse.
In its emergency petition, the Department alleged that Bankers admitted hiring "by and through [a lawyer] ... a private investigator to conduct covert surveillance on a high-level Department employee." The order denying petition for enforcement finds that the "private investigator hired by Bankers illegally tapped the telephone of the employee and has pled guilty to federal wiretapping charges, and is awaiting sentencing on the conviction." Despite another finding that the Department "seeks to investigate whether [Bankers] attempted to alter Department policy by engaging a private investigator to follow a Department employee in order to uncover wrongdoing by the employee," the circuit court denied the Department's petition, effectively terminating the investigation.
In determining the extent of an agency's authority or jurisdiction, we start with the proposition that agencies are creatures of statute. Their legitimate regulatory realm is no more and no less than what the Legislature prescribes by law. Yet it is also true that an agency's own views on where its jurisdictional bournes lie reflect a putative expertise. "[I]nterpretation, made by the agency charged with enforcing a statute, should be accorded great deference unless there is clear error or conflict with the intent of the statute." Associated Mortgage Investors v. Department of Bus. Regulation, 503 So.2d 379, 380 (Fla. 1st DCA), review dismissed, 506 So.2d 1040 (Fla.1987). Where a statute draws an uncertain boundary, judicial deference to an agency's jurisdictional determination is appropriate.
Within its statutorily delimited sphere, an agency with investigative authority has been analogized to a grand jury investigating on reasonable suspicion a possible violation of the criminal law. Such an agency may also investigate to assure itself that no violation of laws it is charged with enforcing has occurred.
The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just *72 because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.
United States v. Morton Salt Co., 338 U.S. 632, 642-43, 70 S.Ct. 357, 364, 94 L.Ed. 401, 410-411 (1950). See also Martin v. Gard, 811 F.Supp. 616, 619 (D.Kan.1993)("In the exercise of their lawful investigatory powers, administrative agencies are conferred `broad discretion to require the disclosure of information concerning matters within their jurisdiction.' ") (quoting Phillips Petroleum Co. v. Lujan, 951 F.2d 257, 260 (10th Cir.1991)).
Among other statutory provisions, the emergency petition for enforcement of agency investigative hearing orders and subpoenas invoked "sections 624.321 and 624.324, Florida Statutes." These provisions confer investigatory authority on the Department, which
may conduct such investigations of insurance matters, in addition to investigations expressly authorized, as it may deem proper to determine whether any person has violated any provision of this code or to secure information useful in the lawful administration of any such provision.
§ 624.307(3), Fla. Stat. (1995). As part of its investigative authority, the Department has the power to subpoena witnesses and documents.
(1) As to any examination, investigation, or hearing being conducted under this code, the Insurance Commissioner and Treasurer or his designee:
....
(b) Shall have the power to subpoena witnesses, compel their attendance and testimony, and require by subpoena the production of books, papers, records, files, correspondence, documents, or other evidence which is relevant to the inquiry.
§ 624.321, Fla.Stat. (1995). We are not concerned here with the virtually ministerial duty, under section 120.569(2)(i), Florida Statutes (Supp.1996), to enforce administrative subpoenas and other discovery orders judicially, when necessary to further the course of substantial interest proceedings.
In the present case, the Department seeks information about the activities of an entity doing business, under a license the Department has issued, in a manner the Department asserts it has reason to believe runs afoul of laws the Department is charged with enforcing. Bankers argues that the order denying petition for enforcement should be affirmed because "an allegation of an Insurance Code violation is a prerequisite to such an investigation." But this puts the cart before the horse. An administrative agency has many good reasons not to file an administrative complaint alleging a violation of law unless and until it has evidence to support the allegation.
The purpose of an administrative investigation is to uncover facts with an eye towards the potential initiation of an agency adjudication, see U.S. v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); cf. Genuine Parts Co. v. FTC, 445 F.2d 1382 (5th Cir.1971) (distinguishing agency investigations from adjudications), or, more generally, for the purpose of facilitating an agency's regulatory goals.
United States Dep't of Labor v. Kast Metals Corp., 744 F.2d 1145, 1150 (5th Cir.1984). A rule that an agency could investigate before filing charges only if it already had all the information it needed to file charges has little to recommend it. The right to discovery once an adjudicatory proceeding begins is clear. § 120.569(2)(d) and (i), Fla.Stat. (Supp. 1996). In investigating thoroughly beforehand, an agency acts responsibly. An agency "may take steps to inform itself as to whether there is probable violation of the law," Morton, 338 U.S. at 643, 70 S.Ct. at 364, without first alleging such a violation.
Bankers also argues that the Department seeks to investigate matters outside its regulatory purview and beyond its authority to consider. While we come to a different conclusion about the scope of the Department's authority, it is clear that the question of departmental authority is central *73 to the present inquiry. We approve the Morton Salt formulation under which an agency's investigatory subpoenas and other statutorily authorized investigative devices are presumptively entitled to be given effect judicially "if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." 338 U.S. at 652, 70 S.Ct. at 369.
We say "presumptively" because the circuit court must also determine, in a case where a resisting party properly raises such issues, whether an agency's investigatory subpoena is overly broad or otherwise unduly burdensome, and whether enforcement would violate some privilege or constitutional right. It is incumbent on any party opposing enforcement of an investigatory subpoena on such grounds to file in timely fashion a motion for protective order or some equivalent pleading in circuit court. In proceedings to enforce investigatory subpoenas, in contrast to judicial enforcement proceedings under section 120.569(2)(i), Florida Statutes (Supp.1996), no administrative law judge need have passed on any such question before the circuit court takes it up. But here Bankers' response to the department's petition for enforcement of agency investigative hearing orders and subpoenas simply disputes the Department's authority to investigate the circumstances surrounding the agency employee's surveillance.
Bankers argues that, to the extent the Department is concerned that violations of the criminal law may have occurred, the matter should be left to state (or, we might add, federal) prosecutors. Bankers maintains that the Department seeks to investigate events and circumstances "unrelated to the insurance activities of Bankers, and thus outside the scope of the Insurance Code." These contentions must be tested against the statutory language on which the Department relies.
That statutory language is drawn broadly. The Department may suspend or revoke an insurer's certificate if the insurance company "[i]s using such methods and practices in the conduct of its business as to render its further transaction of insurance in this state hazardous or injurious to its policyholders or to the public." § 624.418(1)(b), Fla.Stat. (1995). Section 624.404(3)(a), Florida Statutes (1995), mandates that:
The department shall not grant or continue authority to transact insurance in this state as to any insurer the management, officers, or directors of which are found by it to be incompetent or untrustworthy; or so lacking in insurance company managerial experience as to make the proposed operation hazardous to the insurance-buying public; or so lacking in insurance experience, ability, and standing as to jeopardize the reasonable promise of successful operation; or which it has good reason to believe are affiliated directly or indirectly through ownership, control, reinsurance transactions, or other insurance or business relations, with any person or persons whose business operations are or have been marked, to the detriment of policyholders or stockholders or investors or creditors or of the public, by manipulation of assets, accounts, or reinsurance or by bad faith.
Section 624.310(4)(a)1., Florida Statutes, permits the Department to remove affiliated parties, defined to include insurance company personnel, who engage in any "act that demonstrates a lack of fitness or trustworthiness to engage in the business of insurance through engaging in illegal activity or mismanagement of business activities."
We first reject any suggestion that the Insurance Code and the criminal law are neatly dichotomous. The Code explicitly authorizes Departmental action in the event of a regulated insurer's "illegal activity," which includes violations of criminal law the Department is able to establish administratively. Etheridge v. Department of Ins., 688 So.2d 966 (Fla. 1st DCA 1997). It is also true that violations of the Insurance Code may themselves transgress the criminal law. We recently observed "that section 648.57 provides that any violation of chapter 648 is a second degree misdemeanor unless a more severe criminal penalty is provided and ... section 648.46(1) authorizes DOI to administratively prosecute any violation of chapter 648." Id. at 967. That an act is criminal by *74 no means establishes that it does not also violate the Insurance Code.
The Department alleges that regulatory or other issues worth something on the order of eight million dollars to Bankers were pending before the Department during the period the Department proposes to investigate. Just as the Department must be allowed to inspect certain books and records to establish that an insurance company's accounts are in order, so the Department must be permitted to investigate here to determine whether Bankers has complied with the requirements of the Insurance Code in other respects.
It would be difficult to find a business that more vitally affects the public interest than the insurance business, and, without the right to inspect the books of persons engaged in that business, the insurance commissioner would be very much hampered in regulating it as the law directs.
Kennedy v. Knott, 123 Fla. 295, 301, 166 So. 835, 837 (1936). The insurance commissioner would also be "very much hampered in regulating... as the law directs," if the fidelity and reliability of personnel responsible for examining the books were somehow compromised. On remand, the circuit court should order compliance with the Department's amended investigatory hearing orders and subpoenas.
The Department is entitled to investigate whether Bankers has taken action to intimidate insurance regulators or otherwise undermine, manipulate, or subvert the regulatory process. Such conduct might show Bankers to be "untrustworthy" within the meaning of section 624.404(3)(a), Florida Statutes (1995), or amount to "using such methods and practices in the conduct of its business as to render its further transaction of insurance in this state hazardous or injurious to its policyholders or to the public," § 624.418(1)(b), Fla.Stat. (1995), or even "demonstrate[] a lack of fitness or trustworthiness to engage in the business of insurance through engaging in illegal activity." § 624.310(4)(a)1., Fla.Stat. (1995). Although the Department has not alleged any such violationand may neverwe believe the Department has a clear right to investigate, in the circumstances of the present case.
Reversed and remanded.
KAHN, J., concurs.
DAVIS, J., concurs in result only.