886 So.2d 1007 (2004)
Robert Roy CONE, D.O., M.D., Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH, Florida Board of Osteopathic Medicine, Pamela King, Executive Director of Board, and Does 1-100 Should Knowledge of Other Proper Parties Become Apparent to Appellant, Appellees.
No. 1D03-3663.
District Court of Appeal of Florida, First District.
October 28, 2004.
*1008 Appellant, pro se.
Pamela H. Page, Department of Health, Bureau of Health Care, Tallahassee, for Appellees.
ERVIN, J.
Appellant, Robert Roy Cone, D.O., M.D., appeals pro se the corrected final order of the Board of Osteopathic Medicine, permanently revoking his license to practice osteopathic medicine,[1] pursuant to section 456.072(1)(f), Florida Statutes (2003), based on the revocation of his license to practice allopathic medicine[2] in the state *1009 of California for a violation of that state's laws. He raises the following points on appeal:
I. Whether the Board properly applied § 456.072(1)(f), Florida Statutes, to revoke appellant's license to practice osteopathic medicine based solely on the revocation of appellant's California license to practice allopathic medicine.
II. Whether the Board violated appellant's right to due process by denying his request for formal hearing and the opportunity to appear personally.
III. Whether Dr. Kaufman should have recused himself from serving on the Board of Osteopathic Medicine that revoked appellant's license.
IV. Whether variance or waiver was applicable in the underlying disciplinary proceeding, due to deficiency in the charge.
V. Whether the Board considered the mitigation submitted by appellant prior to the decision to revoke his license to practice osteopathic medicine.
We conclude that issues II, III and V are without merit, and summarily affirm as to them. As to issues I and IV, relating to the sufficiency of the allegations of the administrative complaint to charge a violation of section 456.072(1)(f), we reverse the corrected final order and remand the case with directions, in that the order fails to specify how the revocation of appellant's license to practice medicine in the state of California was the result of a violation of law in that state which would also constitute a violation of Florida law.
The administrative complaint filed by appellee Department of Health (DOH), requested that the Board of Osteopathic Medicine discipline appellant's osteopathic license, on the following ground:
Based upon [the revocation of appellant's license to practice medicine in California], the Respondent has violated Section 456.072(1)(f), Florida Statutes (2000), by having a license or the authority to practice any regulated profession revoked, suspended, or otherwise acted against, including the denial of licensure, by the licensing authority of any jurisdiction, including its agencies or subdivisions, for a violation that would constitute a violation under Florida law. The licensing authority's acceptance of a relinquishment of licensure, stipulation, consent order, or other settlement, offered in response to or in anticipation of the filing of charges against the license, shall be construed as action against the license.
The Board's decision to apply the provisions of Chapter 456, rather than Chapter 459, to institute disciplinary charges against appellant was one of law, and as such it is subject to a de novo review standard. See Parlato v. Secret Oaks Owners Ass'n, 793 So.2d 1158, 1162 (Fla. 1st DCA 2001). "The standard of review of an agency decision based upon an issue of law is whether the agency erroneously interpreted the law and, if so, whether a correct interpretation compels a particular action." Florida Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 847 (Fla. 1st DCA 2002).
We begin our analysis with the usual recognition of deference to an agency's interpretation of a statute it is charged to administer. See Ocampo v. Dep't of Health, 806 So.2d 633, 634 (Fla. 1st DCA 2002); Florida Dep't of Ins. & Treasurer v. Bankers Ins. Co., 694 So.2d 70 (Fla. 1st DCA 1997). "However, an appellate court can overturn the agency's interpretation of a statute if the interpretation is clearly erroneous." Ocampo, 806 So.2d at 634; Dep't of Natural Res. v. Wingfield Dev. Co., 581 So.2d 193 (Fla. 1st DCA 1991).
Appellant contends the Board of Osteopathic Medicine cannot legally discipline *1010 a physician for acts allegedly occurring in the course of a different specialty of medicine in another jurisdiction. A cursory reference to the general provisions of 456.072(1)(f) clearly belies that argument. This statute provides in pertinent part:

456.072 Grounds for discipline; penalties; enforcement. 
(1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2) may be taken:
....
(f) Having a license or the authority to practice any regulated profession revoked, suspended, or otherwise acted against, including the denial of licensure, by the licensing authority of any jurisdiction, including its agencies or subdivisions, for a violation that would constitute a violation under Florida law.
(Emphasis added). Not only does the language of the statute empower the Board of Osteopathic Medicine to discipline an osteopathic physician whose license in any regulated profession was revoked by another jurisdiction, but the general provisions of Chapter 456, relating to all health professions and occupations, so indicate as well. For example, the subject matter of chapter 456 broadly refers to "Health Professions and Occupations: General Provisions." Indeed, the chapter sets out the general authority of the DOH to regulate all professionals within the Division of Medical Quality Assurance. See §§ 456.001, 456.002, and 456.004, Fla. Stat. (2003).
Appellant also contends that the Board lacked the authority to seek revocation of his Florida license pursuant to section 456.072(1)(f) without alleging how the violation of California law was tantamount to a violation of Florida law. The Board acknowledges that the statute under which appellant was charged requires, on its face, proof of same as an essential element, but it cites the rule of construction providing that "`statutes which relate to the same or to a closely related subject or object are regarded as in pari materia and should be construed together and compared with each other.'" Smith v. Crawford, 645 So.2d 513, 522 (Fla. 1st DCA 1994) (quoting Ferguson v. State, 377 So.2d 709, 710 (Fla.1979)). In such cases, "the primary rule of statutory interpretation is to harmonize related statutes so that each is given effect." Butler v. State, 838 So.2d 554, 556 (Fla.2003). See also Fla. Dep't of Educ. v. Cooper, 858 So.2d 394, 396 (Fla. 1st DCA 2003).
The Board argues that under this rule, it need not specify in its complaint, nor offer proof, what Florida law appellant allegedly violated in committing a violation of California law, because relevant provisions under Chapter 459, regulating the practice of osteopathic medicine, impose no such requirement. Thus, by reading the relevant provisions of chapters 456 and 459 in pari materia, it contends it need allege and prove only, as the basis for its authority to proceed against his license in the state of Florida, that Dr. Cone's license as a health practitioner had been revoked in another jurisdiction. In support of its argument, it refers to section 459.015, Florida Statutes (2003), which states in part:
(1) The following acts constitute grounds for denial of a license or disciplinary action, as specified in s. 456.072(2):
....
(b) Having a license or the authority to practice osteopathic medicine revoked, suspended, or otherwise acted against, including the denial of licensure, by the licensing authority of any jurisdiction, including its agencies or subdivisions.
(Emphasis added.)
It is clear that the above statute confers authority on the Board only to proceed *1011 against an osteopathic physician whose license to practice such specialty in another jurisdiction was there acted against. These provisions offer no support to the Board's position because, as stated, the license of appellant, revoked in California, was for a different specialty, i.e., that of medicine. In our judgment, the Board's right to proceed against appellant's Florida license under section 456.072(1)(f) must find support in some other pertinent statutory provision. Among other provisions, it cites section 456.072(2), which states in part:
When the board, or the department when there is no board, finds any person guilty of the grounds set forth in subsection (1) or of any grounds set forth in the applicable practice act, including conduct constituting a substantial violation of subsection (1) or a violation of the applicable practice act which occurred prior to obtaining a license, it may enter an order imposing one or more of the following penalties:
....
(b) Suspension or permanent revocation of a license.
The Board points out that the "applicable practice act," referenced in section 456.072(2), is chapter 459, pertaining to osteopathic medicine. It continues that the general provisions of section 456.072 authorize suspension or revocation of the practitioner's license for any of the grounds set out in chapter 459, and that section 459.015(1)(pp) allows the Board to bring disciplinary action against a licensee for, among other things, "[v]iolating any provision of this chapter or chapter 456." Finally, it refers to section 459.015(2), which provides:
The board may enter an order denying licensure or imposing any of the penalties in s. 456.072(2) against any applicant for licensure or licensee who is found guilty of violating any provision of subsection (1) of this section or who is found guilty of violating any provision of s. 456.072(1).
The Board concludes from its cross reference to the above provisions that it was authorized to institute disciplinary action against Dr. Cone without alleging any violation of Florida law. We cannot agree. Initially, it should not be forgotten that because professional disciplinary statutes are penal in nature, they must be strictly construed with any ambiguity interpreted in favor of the licensee. See Ocampo v. Dep't of Health, 806 So.2d 633, 634 (Fla. 1st DCA 2002); Elmariah v. Dep't of Prof'l Regulation, 574 So.2d 164 (Fla. 1st DCA 1990).
In Ocampo, the court construed a disciplinary provision of the Medical Practice Act, section 458.331(1)(b), Florida Statutes (1999), which is worded similarly to the disciplinary provisions at issue here. Section 459.331(1)(b) provides that a violation of the Medical Practice Act occurs when a physician's "license or the authority to practice medicine [is] revoked, suspended, or otherwise acted against, including the denial of licensure, by the licensing authority of any jurisdiction, including its agencies or subdivisions." The Board of Medicine alleged that Ocampo violated section 458.331(1)(b), in that the United States Department of Health and Human Services had excluded Ocampo from participating in Medicare, Medicaid and all federal health-care programs for fifteen years. At the hearing before the Board, Ocampo argued that exclusion of a physician from participation in federal health-care programs was not action by a licensing authority of any jurisdiction, as prohibited by section 458.331(1)(b), Florida Statutes. This court agreed, finding a plain reading of the statute made the Board's determination *1012 that Ocampo's exclusion from all federal health-care programs constituted a violation of section 458.331(1)(b) to be clearly erroneous. The court noted the exclusion from participation in federal health-care programs did not infringe upon Ocampo's authority to practice medicine. It concluded that Ocampo had been improperly disciplined for violations of sections 458.331(1)(b) and 458.331(1)(kk) (failure to report the exclusion within thirty days); therefore, both charges should have been dismissed.
In contrast to the rule permitting in pari materia construction of various statutes dealing with the same or a closely related subject, i.e., discipline of the license of a health-care professional, is the maxim instructing that a specific statute controls over a general statute covering the same subject matter. See Gretz v. Unemployment Appeals Comm'n, 572 So.2d 1384, 1386 (Fla.1991); Adams v. Culver, 111 So.2d 665, 667 (Fla.1959) ("It is a well settled rule of statutory construction, ... that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms."); State, Bd. of Trustees of the Internal Improvement Trust Fund v. Day Cruise Ass'n, Inc., 794 So.2d 696, 701 (Fla. 1st DCA 2001). Section 459.015 is, of course, more specific than section 456.072, in that it pertains only to disciplinary actions against the license of an osteopathic professional.
A comparison of the titles of the respective chapters militates against an in pari construction of the provisions separately stated. For example, chapter 456 sets forth general provisions regarding regulation of health-care professionals, while chapter 459 is a special statute concerned only with regulation of osteopathic professionals. The distinction is apparent, too, in the wording of the disciplinary provisions of the respective statutes. Section 459.015(1)(b), in authorizing the Board of Osteopathic Medicine to proceed against the license of an osteopathic physician whose license has been revoked in another state, explicitly provides that the revoked license must be one for osteopathic medicine. Similarly, the Board's reference to the language in section 459.015(2), permitting the Board to revoke the Florida license of a physician who was found guilty of violating any provision of section 456.072(1), must be limited by the provisions in the latter statute, which explicitly require that the violation of the law in the foreign state, leading to the subsequent disciplinary action, be, as well, a violation of Florida law.
Although we are unwilling to conclude, as a matter of law, that the Board of Osteopathic Medicine may not discipline the license of an osteopathic physician pursuant to section 456.072(1)(f), we are in agreement that the administrative complaint failed to charge a violation because it did not allege that appellant's license to practice any regulated profession was revoked, suspended, or otherwise acted against, by the licensing authority of any jurisdiction "for a violation that would constitute a violation under Florida law." We conclude, consistent with Ocampo, that the charge should have been dismissed.
Accordingly, DOH's corrected final order revoking appellant's license to practice osteopathic medicine is reversed, without prejudice to DOH to pursue disciplinary action in the manner contemplated by the statutes applicable to this case.
REVERSED and REMANDED.
ERVIN, BOOTH and KAHN, JJ., CONCUR.
NOTES
[1] Osteopathic medicine, or osteopathy, refers to "any disease of the bone," and is 

a system of therapy ... based on the theory that the body is capable of making its own remedies against disease and other toxic conditions when it is in normal structural relationship and has favorable environmental conditions and adequate nutrition. It utilizes generally accepted physical, medicinal, and surgical methods of diagnosis and therapy, while placing chief emphasis on the importance of normal body mechanics and manipulative methods of detecting and correcting faulty structure.
Dorland's Medical Dictionary 943 (26th ed. 1985).
[2] An allopathic physician is a practitioner of allopathy, which is "a term applied to that system of therapeutics in which diseases are treated by producing a condition incompatible with or antagonistic to the condition to be cured or alleviated." Dorland's Medical Dictionary 50 (26th ed. 1985).