604 So.2d 452 (1992)
Peter FORSYTHE, et al., Appellants,
v.
LONGBOAT KEY BEACH EROSION CONTROL DISTRICT, Appellee.
No. 78654.
Supreme Court of Florida.
June 25, 1992.
Rehearing Denied September 23, 1992.
*453 David W. Wilcox, Bradenton, for appellants.
Daniel U. Livermore, Livermore, Klein & Lott, P.A., Jacksonville, and Steven J. Chase of Abel, Band, Russell, Collier, Pitchford & Gordon, Chartered, Sarasota, for appellee.
BARKETT, Justice.
Peter Forsythe and Alisabethe Jergens Forsythe (Forsythes) appeal the final judgment rendered by the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida, validating the bond issue proposed by the appellee, Longboat Key Beach Erosion Control District (District).[1]
The Town of Longboat Key (Town) is a municipality which encompasses the entire island of Longboat Key. The island of Longboat Key is situated such that approximately the north one-half of the island is in Manatee County and the south one-half is in Sarasota County. On July 21, 1990, the Town adopted ordinance 90-21, creating a special district, located in both Manatee and Sarasota counties, for the purpose of funding beach renourishment on Longboat Key. On April 1, 1991, the Town adopted a second ordinance, 91-06, to correct mistakes in the legal description of the boundary contained in ordinance 90-21. The ordinances specifically state that the District is a dependent special district under chapter 189, Florida Statutes (1989).
The District sought court approval to issue $14,000,000 in General Obligation Bonds. The Forsythes intervened in the bond validation proceedings as property owners and interested persons pursuant to section 75.07, Florida Statutes (1989).[2] They argued that the district was in fact an independent special district under section 189.403(3), Florida Statutes (1989), because it included more than one county.[3] Therefore, they argued, the District was illegal because under chapter 189 independent districts could only be created by the legislature. Additionally, they argued that the municipal ordinances were invalid because ordinance 90-21 contained a faulty boundary description and because ordinance 91-06 was not adopted according to the procedures set forth in chapter 166, Florida Statutes (1989).
After trial, the circuit court entered a final judgment finding, among other things, that the district was a dependent special district and that both ordinances were valid. The Forsythes appealed to this Court.
We begin our analysis with the "Uniform Special District Accountability Act of 1989," chapter 189, Florida Statutes (1989). The overall legislative purpose in enacting chapter 189 was to consolidate and unify the provisions of existing law relating to the creation and accountability of special districts. See § 189.402(2)(a)-(d), Fla. Stat. (1989).
One of the statute's primary goals is to "[c]larify special district definitions and creation methods in order to ensure consistent application of those definitions and creation methods across all levels of government." § 189.402(2)(e), Fla. Stat. (1989). This purpose is further emphasized in the first section of the "Statement of legislative purpose and intent" that provides:
It is the intent of the Legislature through the adoption of this chapter to provide general provisions for the definition, *454 creation, and operation of special districts.
§ 189.402(1), Fla. Stat. (1989) (emphasis added); see Lorraine R. Dempsey et al., Solving the Accountability Puzzle: Putting the Pieces Together Under the Uniform Special District Accountability Act of 1989, Fla.B.J., Jan. 1990, at 43, 43; Mary Kay Falconer, Special Districts: The "Other" Local Governments  Definition, Creation, and Dissolution, 18 Stetson L.Rev. 583, 585-593 (1989).
The Act defines a special district as
a local unit of special-purpose, as opposed to general-purpose, government within a limited boundary, created by general law, special act, local ordinance, or by rule of the Governor and Cabinet. The special purpose or purposes of special districts are implemented by specialized functions and related prescribed powers. The term does not include a school district, a community college district, a special improvement district created pursuant to s. 285.17, a municipal service taxing or benefit unit as specified in s. 125.01, or a board which provides electrical service and which is a political subdivision of a municipality or is part of a municipality.
§ 189.403(1), Fla. Stat. (1989).
The narrow issue in this case involves the definitional distinction between an independent special district and a dependent special district. The distinction is crucial because the rules regarding the formation of special districts vary depending on whether the special district is dependent or independent. Chapter 189 expressly states that
[i]t is the specific intent of the Legislature that dependent special districts shall be created at the prerogative of the counties and municipalities and that independent special districts shall only be created by legislative authorization as provided herein.
§ 189.402(1), Fla. Stat. (1989) (emphasis added). The District in this case was created by municipal ordinance. Accordingly, if determined to be an independent district, it would be invalid under the rule in section 189.402(1).
It is a fundamental principle of statutory construction that where the language of a statute is plain and unambiguous there is no occasion for judicial interpretation. As this Court set forth more than 70 years ago in Van Pelt v. Hilliard:
"The Legislature must be understood to mean what it has plainly expressed and this excludes construction. The Legislative intent being plainly expressed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms. Cases cannot be included or excluded merely because there is intrinsically no reason against it. Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity. If a Legislative enactment violates no constitutional provision or principle it must be deemed its own sufficient and conclusive evidence of the justice, propriety and policy of its passage. Courts have then no power to set it aside or evade its operation by forced and unreasonable construction. If it has been passed improvidently the responsibility is with the Legislature and not the courts. Whether the law be expressed in general or limited terms, the Legislature should be held to mean what they have plainly expressed, and consequently no room is left for construction, but if from a view of the whole law, or from other laws in pari materia the evident intent is different from the literal import of the terms employed to express it in a particular part of the law, that intent should prevail, for that, in fact is the will of the Legislature." 2 Sutherland's Statutory Construction, Sec. 366, p. 701.
75 Fla. 792, 798-99, 78 So. 693, 694-95 (1918); e.g., Streeter v. Sullivan, 509 So.2d 268, 271 (Fla. 1987); Coon v. Continental Ins. Co., 511 So.2d 971, 973 (Fla. 1987); *455 Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984); Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 882 (Fla. 1983); Citizens v. Public Serv. Comm'n, 425 So.2d 534, 542 (Fla. 1982); St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982); Carson v. Miller, 370 So.2d 10, 11 (Fla. 1979); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976); McDonald v. Roland, 65 So.2d 12, 14 (Fla. 1953). The sum of these cases is that this Court is without power to construe an unambiguous statute.
In the case before us, the legislature has provided clear definitions of both dependent and independent districts. Section 189.403(2), Florida Statutes (1989), states:
(2) "Dependent special district" means a special district that meets at least one of the following criteria:
(a) The membership of its governing body is identical to that of the governing body of a single county or a single municipality.
(b) All members of its governing body are appointed by the governing body of a single county or a single municipality.
(c) During their unexpired terms, members of the special district's governing body are subject to removal by the governing body of a single county or a single municipality.
(d) The district has a budget that requires approval through an affirmative vote or can be vetoed by the governing body of a single county or a single municipality.
Section 189.403(3) provides:
(3) "Independent special district" means a special district that is not a dependent special district as defined in subsection (2). A district that includes more than one county is an independent special district.

(Emphasis added.)
The District concedes that the second sentence of section 189.403(3) means that a district which crosses county lines is an independent special district.[4] Nevertheless, the District argues that the Town of Longboat Key represents a special situation not contemplated by the legislature because, although the District overlaps two counties, it is contained within a single municipality and therefore meets the definitions of both an independent and a dependent special district.
The District thus attempts to characterize its argument in terms of ambiguity. However, there is a difference between ambiguity and unexpressed intention. Ambiguity suggests that reasonable persons can find different meanings in the same language. Black's Law Dictionary 79 (6th ed. 1990). The language at issue in subsections 189.403(2) and (3) is not susceptible to differing interpretations. The fact that the statute first defines a dependent special district and then exempts multi-county districts from that definition does not render the statute unclear or susceptible to different meanings.
It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole. See, e.g., Marshall v. Hollywood, Inc., 224 So.2d 743, 749 (Fla. 4th DCA 1969), writ discharged, 236 So.2d 114 (Fla.), cert. denied, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970). Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another. E.g., Villery v. Florida Parole & Probation Comm'n, 396 So.2d 1107, 1111 (Fla. 1980). Accordingly, both definitions in section 189.403 must be considered as a whole, and in their entirety, in order to effectuate the legislative intent. See, e.g., Fleischman v. Department of Professional Regulation, 441 So.2d 1121, 1123 (Fla. 3d DCA 1983) ("Every statute must be read as a whole with meaning ascribed to every portion and due regard given to the semantic and contextual interrelationship between its parts."), review denied, 451 So.2d 847 (Fla. 1984).
Read together, there is no ambiguity in section 189.403 because the qualifying language in the second sentence of subsection 189.403(3) makes clear that a *456 district that includes more than one county is an independent special district  notwithstanding that it satisfies any of the four criteria for a dependent special district in section 189.403(2). Such a reading harmonizes both definitions. To rule that a district which crosses county lines is dependent because it satisfies the criteria in subsection 189.403(2) would make a nullity of the second sentence in subsection 189.403(3). It is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless. See, eg., Villery; Cilento v. State, 377 So.2d 663, 66 (Fla. 1979); Fleischman. Thus, contrary to the District's assertion, it does not satisfy both statutory definitions because the qualifying language of section 189.403(3) precludes the District from being defined as dependent.
Likewise, the fact that the legislature may not have anticipated a particular situation does not make the statute ambiguous. To return to the quotation from Van Pelt v. Hilliard:
"Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity."
75 Fla. at 798, 78 So. at 694 (quoting Sutherland's Statutory Construction, supra); see also Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla. 1960) ("If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended.").
The plain and unambiguous wording of the statute in this case is that where a special district includes more than one county, that district is an independent special district. Nothing in the statute itself evinces a legislative intent to the contrary. All parties agree that the Longboat Key Beach Erosion Control District includes parts of both Manatee and Sarasota counties. It is therefore an independent district under the definition provided in section 189.403(3). As such, the District could not be created by municipal ordinance, but only by legislative act. §§ 189.402(1), 189.404, Fla. Stat. (1989).
We therefore reverse the trial court's ruling and find the Longboat Beach Erosion Control District to be an illegal special district and its bond issue to be invalid. We do not address the other issues on appeal.
It is so ordered.
SHAW, C.J., and McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
I disagree with the majority's holding that the second sentence of section 189.403(3), Florida Statutes (1989), creates no ambiguity in this unique case. I find that the second sentence of subsection (3), if read together with subsection (2), does make the statute ambiguous.
The majority states that to find the Longboat Key Beach Erosion Control District to be a dependent district would make the second sentence of subsection (3) a nullity. The majority, although stating that it read subsections (2) and (3) together, in actuality reads the second sentence of subsection (3) in isolation. Read together, I find that the subsections contradict each other. On the one hand, if the district meets certain criteria in subsection (2), it is a dependent district, while, on the other hand, in subsection (3), the statute states that the same district cannot be a dependent district. The majority finds that the second sentence in subsection (3) constitutes language qualifying the previous section. I find that, absent language expressly stating that under subsection (3) a district is an independent district, even if it meets the requirements of subsection (2), the statute is ambiguous as applied to the Longboat Key Beach Erosion Control District.
The majority's holding also ignores the fact that the Town of Longboat Key could *457 have accomplished its intended outcome by first creating two dependent districts, one district encompassing that portion of Longboat Key located within Sarasota County and another encompassing the portion located within Manatee County, and then merging the two districts under section 189.4042(1), Florida Statutes (1989). Section 189.4042(1) provides:
The merger of one or more municipalities or counties with special districts, or the merger of two or more special districts, may be adopted by passage of a concurrent ordinance or, in the case of special districts, resolution by the governing bodies of each unit to be affected.
Under this procedure, Longboat Key could have validly created both districts by passing municipal ordinances pursuant to section 189.402(1), Florida Statutes (1989). Longboat Key could then merely pass two ordinances or resolutions merging the two districts in order to achieve its goal. Since Longboat Key would be the governing body of both dependent districts, the municipality would need only to engage in a pointless ordinance shuffle in order to validly do what the majority says it cannot. The availability of this process to Longboat Key emphasizes the ambiguity created when reading sections 189.403(2) and (3) together and that the legislature did not contemplate the existence of a municipality located within two counties.
The majority's literal interpretation of the statutes "leads to an unreasonable or ridiculous conclusion or to a purpose not designated by the lawmakers." City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla. 1983). The majority's construction also places section 189.403(3) in conflict with section 189.4042(1). This Court "should avoid a construction which places in conflict statutes which cover the same general field. The law favors a rational, sensible construction." Id. at 1282 (citation omitted).
I find that section 189.403(3) is ambiguous as applied to the Town of Longboat Key. As such, the only reasonable construction is that, although crossing county lines, the district in question is a dependent district because it meets all of the requirements of section 189.403(2). Accordingly, I would validate the bonds.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(2), of the Florida Constitution.
[2] That section provides:

Any property owner, taxpayer, citizen, or person interested may become a party to the action by moving against or pleading to the complaint at or before the time set for hearing. At the hearing the court shall determine all questions of law and fact and make such orders as will enable it to properly try and determine the action and render a final judgment with the least possible delay.
§ 75.07, Fla. Stat. (1989).
[3] Section 189.403(3) provides in relevant part that "[a] district that includes more than one county is an independent special district."
[4] This concession was made clear at oral argument.