POLEN, J.
 

 R.I. appeals the trial court’s “Order Denying Motion to Order Department of Children and Families to Pay Fees Associated with the Administration of the Trust.”
 

 R.I. is developmentally disabled. He resided in foster care until his eighteenth birthday in April 2010. He remains under the extended jurisdiction of the juvenile court until his 19th birthday.
 
 See
 
 § 39.013(2), Fla. Stat. (2010). While in foster care, R.I. received Social Security benefits due to his disability, which were held in the department’s master trust, for which the department is trustee. R.I. now lives in an APD (Agency for Persons with Disabilities) home, and receives a stipend from the department through the Road to Independence (RTI) program.
 

 Section 402.17(7)(c), Floi'ida Statutes (2010), applicable to R.I., provides as follows:
 

 When a client under the age of 18 who has been in the legal custody, care, or control of the department and for whom the department is holding money or property as a trustee attains the age of 18 and has a physical or mental disability, or is otherwise incapacitated or incompetent to handle that client’s own financial affairs,
 
 the department shall apply for a court order from a court of competent jurisdiction to establish a trust on behalf of that client.
 
 Where there is no willing relative of the client acceptable to the court available to serve as trustee of such proposed trust,
 
 the court may enter an order authorizing
 
 
 *359
 

 the department to serve as trustee of a separate trust under such terms and conditions as the court determines appropriate to the circumstances,
 
 [emphasis added]
 

 Because R.I. was not competent to handle his own financial affairs, and had no responsible relative to act as trustee, he requested that the court order the department to establish a trust on his behalf, separate from the master trust, and that the department serve as trustee. The trial court granted, in part, R.I.’s motion to establish a trust and appoint trustee, and reserved ruling on the issue of fees that would be imposed for the establishment and administration of the trust.
 

 An entity was located that was willing to serve as trustee, the Center for Special Needs Trust Administration. This Florida, not-for-profit corporation has established a pooled trust pursuant to 42 U.S.C. § 1396p(d)(4)(C), to protect public assistance benefits, and utilize trust assets to meet special needs that are not provided by basic public assistance, on behalf of its beneficiaries. A one-time fee of $500 for trusts with less than $7,500, is assessed at the time of establishment of a trust by that agency.
 

 The parties agreed to having R.I.’s conserved funds in the department’s master trust transferred to a trust administered by the Center for Special Needs Trust Administration, rather than having the department create an entirely new trust for R.I.
 
 [1]
 
 R.I. did not, however, consent to the payment of the one-time $500 fee for the establishment of the trust, and moved for an order requiring the department to pay the fee. At the hearing, R.I. argued that, when the department is required to “establish” a trust pursuant to subsection (c) of the statute, it must pay any fees associated with the establishment of the trust. The trial court disagreed, and denied R.I.’s motion to require the department to pay the fee. In its written order, the trial court stated:
 

 This is a case of first impression. This Court gives the plain meaning to words in § 402.17(7)(c). Here, the statute is silent as to the payment of fees. The Court will not read this requirement into the statute as it is presumed the Legislature knew how to state a requirement that [the department] pay trust fees.
 

 We agree with the trial court. The statute directs only that “the department shall apply for a court order from a court of competent jurisdiction to establish
 
 a
 
 trust on behalf of that client,” and that “the court
 
 may
 
 enter an order authorizing the department to serve as trustee of a separate trust
 
 under such terms and conditions as the court determines appropriate to the circumstances.”
 
 § 402.17(7)(c) (emphasis added). The latter course of action is, of course, discretionary.
 

 “Legislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning.”
 
 Fla. Dep’t of Children & Family Servs. v. P.E.,
 
 14 So.3d 228, 234 (Fla.2009). As the supreme court recently reiterated:
 

 [A] “statute must be given its plain and obvious meaning.” ... In interpreting [a statute], however, we cannot read [a] subsection in isolation, but must read it within the context of the entire section in order to ascertain legislative intent for the provision.... A “statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts” and is not to
 
 *360
 
 be read in isolation, but in the context of the entire section....
 

 Fla. Dep’t of Envtl. Protection v. ContractPoint Fla. Parks, LLC,
 
 986 So.2d 1260, 1265-66 (Fla.2008) (citations omitted);
 
 see also P.E.,
 
 14 So.3d at 234 (“[i]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole”) (quoting
 
 Forsythe v. Longboat Key Beach Erosion Control Dist.,
 
 604 So.2d 452, 455 (Fla.1992)).
 

 The department’s obligations in administering a child’s master trust account are detailed in section 402.17. The Legislature’s first charge in the statute requires the department to “protect the financial interest of the state with respect to claims that the state may have for the care and maintenance of clients of the department or agency.” The statute further instructs that the department
 

 shall, as trustee, hold in trust and administer money ... designated for the personal benefit of clients .... [and] act as trustee of clients’ money ... in accordance with the usual fiduciary standards applicable generally to trustees, and shall act to protect both the short-term and long-term interests of the clients for whose benefit it is holding such money....
 

 § 402.17, Fla. Stat. The department contends that the administrative fee to join the special needs pooled trust is an appropriate expenditure of client funds under the statute, because the expenditure is intended to benefit, and will benefit, R.I. The department notes that R.I. agreed to the use of this trust in order to meet his needs.
 

 Subsection (2)(c) of the statute provides: The department ...
 
 shall
 
 perform the following acts: ...
 

 Withdraw the money and use it to meet current needs of clients.
 
 For purposes of this paragraph, ‘current needs’ includes payment of fees assessed under s. 402.33. The amount of money withdrawn shall take into account the need of the department ... as the trustee of a client’s money and property, to provide for the long-term needs of a client, including, but not limited to, ensuring that a client under the age of 18 will have sufficient financial resources available to be able to function as an adult upon reaching the age of 18, meeting the special needs of a client who has a disability and whose special needs cannot otherwise be met by any form of public assistance or family resources, or maintaining the client’s eligibility for public assistance, including medical assistance, under state or federal law.
 

 § 402.17(2)(c) (emphasis added).
 

 R.I.’s entry into the trust will allow him to conserve his assets, and thus, will protect both his short-term and long-term interests.
 
 See
 
 § 402.17. As the department explains in its answer brief:
 

 The special needs pooled trust is established and administered pursuant to 42 U.S.C. § 1396p(d)(4)(C), to ensure that assets contained in the trust are exempt from being counted towards the [$2,000] SSI resource cap. In other words, the primary purpose of the special needs pooled trust is to ensure that [R.I.] can conserve some level of personal assets while continuing to be eligible for SSI benefits. [R.I.] may also deposit his Road to Independence stipend into this trust.
 

 Accordingly, the special needs pooled trust is an established and lawful vehicle for holding and administering funds of an SSI beneficiary, without those funds being counted against the $2,000 SSI resource cap. 42 U.S.C. § 1396p(d)(4)(C); POMS SI 01120.203.
 

 We further agree with the department that the expenditure of R.I.’s assets to
 
 *361
 
 cover the administrative fee is consistent with “the usual fiduciary standards applicable generally to trustees,” as required by section 402.17. Section 786.0816, Florida Statutes, allows a trustee to, among other things, “[p]ay taxes, assessments, ... and other expenses incurred in the administration of the trust.” § 736.0816(15), Fla. Stat. (2010). We disagree with R.I. that using his funds to pay the administrative fee constitutes compensation to the department.
 

 R.I. speculates that the use of his master trust funds to pay the pooled trust fee “could” violate sections of the master trust that prohibit expenditure of trust assets in payment of a client’s “debt.” Citing no legal authority, R.I. implies that expenditure of master trust assets for anything other than a “basic living expense” constitutes satisfaction of a debt. Here, however, R.I.’s master trust assets are not being used to pay a debt, but an expense necessary to shield his assets and protect his eligibility for federal welfare benefits.
 

 In summary, the trial court correctly concluded there is no statutory requirement mandating the department to pay any administrative fees or costs for the establishment of a special needs pooled trust for a client who attains the age of eighteen. To the contrary, the applicable statutes authorize the department, as trustee, to expend the client’s trust assets for his benefit. R.I.’s joining the special needs pooled trust allows him to conserve his assets and ensure continued eligibility for public assistance, making the $500 administrative fee to join the special needs pooled trust an appropriate expenditure.
 

 Affirmed.
 

 HAZOURI and GERBER, JJ., concur.
 

 [1]
 

 . The res of this trust will be composed of R.I.’s SSI benefits currently held in the department’s master trust, future payments of SSI benefits, and his RTI monthly stipend.