# Third District Court of Appeal

## State of Florida

Opinion filed July 19, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2894
Lower Tribunal No. 16-AP-2-P
_____

**DMB Investment Trust and SKB Investment Trust,**
Petitioners,

vs.

**Islamorada, Village of Islands, a Florida municipality,**
Respondent.

On Petition for Writ of Certiorari to the Circuit Court for Monroe County, Appellate Division, Timothy J. Koenig, Judge.

John A. Jabro, for petitioners.

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., and Jeffrey L. Hochman (Fort Lauderdale), for respondent.

Before LAGOA, SALTER, and FERNANDEZ, JJ.

LAGOA, J.

Petitioners, DMB Investment Trust and SKB Investment Trust ("Petitioners"), petition this Court for a writ of certiorari to quash a decision of the appellate division of the Sixteenth Judicial Circuit Court affirming a final order of an Islamorada, Village of Islands Code Compliance Hearing Officer. Because the appellate division of the circuit court properly applied the unambiguous provisions of the Islamorada, Village of Islands Code of Ordinances and Petitioners do not dispute that they were afforded procedural due process, we deny the petition.

I.    FACTUAL AND PROCEDURAL HISTORY

The Petitioners own property located at 139 Gimpy Gulch Drive, Islamorada, Florida. Petitioners sought to install a swim buoy system adjacent to and waterward of the mean high water line of their property in order to provide themselves a protected swimming area. On March 2, 2015, the Florida Department of Environmental Protection issued a letter to the Petitioners authorizing the installation of the buoy system. The letter also stated that it did "not relieve you from the responsibility of obtaining other federal, state, or local authorizations that may be required for the activity." On June 3, 2015, the United States Army Corps of Engineers issued a similar letter, authorizing the installation of the buoy system, but stating that "[t]his Department of the Army permit does not give absolute authority to perform the work as specified on your application. The proposed work may be subject to local building restrictions."

2

Jerry Sanders ("Sanders"), a Code Compliance Officer for appellee, Islamorada, Village of Islands (the "Village"), received a complaint about the buoy system. Sanders determined that no permit had been issued by the Village for the installation of the buoys. On July 9, 2015, the Village sent a letter to Don Horton[1] ("Horton"), who the Petitioners had hired to assist with permit applications, stating that the "buoys and rope system that were installed must be removed within seven (7) days of this action or Code Enforcement will occur." The Village's letter stated that a June 16, 2015, permit issued by the Village to the Petitioners solely authorized the removal of four concrete pier bases, and that it did not authorize the installation of a buoy system, "irrespective of what approvals have been received from the Army Corps of Engineers and the Department of Environmental Protection." The buoy system was not removed.

On August 25, 2015, the Village issued a Notice of Warning to the Petitioners, notifying them that the property was in violation of Village ordinances. On November 3, 2015, the Village issued a Notice of Violation to the Petitioners. The Notice of Violation stated that the property was in violation of sections 30-681(b)(2)[2] and 30-1543(a), (c)[3] of the Village Code of Ordinances ("Village

---

[1] Horton is a licensed contractor, certified building official, and former director of code enforcement for the Village.

[2] Section 30-681(b)(2) provides:

Sec.  30-681.  -  Purpose;  uses  generally;  districts

Code"), and that in order to bring the property in compliance with the Village

established.

(a) *Purpose.* In order to ensure that all development is consistent with the goals and objectives of the comprehensive plan, it is necessary and proper to establish a series of zoning districts to establish use and bulk regulations that control the use of land in each district consistent with this chapter. All development within each zoning district shall be consistent with the purposes stated for that district in this division.

(b) *Uses generally.*

(1) No structure or land in the village shall hereafter be developed, used or occupied unless expressly authorized in a zoning district in this division.

(2) Uses not specifically listed herein as a permitted or conditional use are prohibited, unless the director of planning and development services determines by written interpretation that the proposed use exhibits similar characteristics to a listed permitted use, in which case the proposed use shall be permitted in the same manner as the use with similar characteristics.

[3] Section 30-1543(a),(c) provides:

Sec. 30-1543. - Shoreline environmental and development criteria.

(a) The purpose of this section is to allow for reasonable access between the land and water, protect marine and terrestrial natural resources, assure good water quality, provide a consistent community character, protect structures from the effects of longterm sea level rise, protect beaches and shores from erosion, avoid adverse impacts on navigation and provide secure boat storage.

4

Code, the Petitioners needed to remove the buoy system.

The Petitioners did not remove the buoy system, and the matter proceeded to a code compliance hearing in front of a Hearing Officer on December 15, 2015. At the hearing, Sanders testified that no permits had been submitted for the buoy system and that the Petitioners needed to remove the system in order to gain compliance. Horton testified that a building official for the Village told him that a permit was not needed for the buoys. Horton also testified that prior to submitting the application for the June 16, 2015, permit to remove the concrete pier bases he obtained approval for the buoy system from the Army Corps of Engineers and the Department of Environmental Protection.

On January 27, 2016, the Hearing Officer entered a Findings of Fact, Conclusions of Law, and Amended Order (the "Final Order"). The Hearing Officer found the Petitioners "to be in violation of Section 30-1543(a) and Section 30-1543(c) of the Village Code, entitled, 'Shoreline environmental and development criteria,' and Section 30-681(b)(2) of the Village Code, entitled, 'Purpose; uses generally; districts established' by installing a rope and buoy system

---

. . . .

> (c) All development waterward of the mean high-water line shall require approval by the U.S. Army Corps of Engineers and state department of environmental protection.

without a permit from the Village." The Petitioners were ordered to remove the buoy system within sixty days.

The Petitioners appealed to the appellate division of the circuit court. The Petitioners argued that the Final Order was "erroneously based upon the very general provisions of Section 30-681(b)(2)," and that pursuant to rules of statutory construction, the Hearing Officer was instead required to apply the more specific provision of section 30-1543, which specifically enunciates shoreline environmental and development criteria and requires approval only from the Army Corps of Engineers and the Department of Environmental Protection. Indeed, the Petitioners asserted that section 30-1543(c) excluded "any other permitting requirements."

The circuit court found that the Hearing Officer applied section 30-681(b)(2) correctly, and affirmed the Hearing Officer's ruling that the buoy system was in violation of section 30-681(b)(2). With regard to section 30-1543, however, the circuit court found that the Petitioners complied with section 30-1543(c) because they obtained approval from the Army Corps of Engineers and the Department of Environmental Protection, and therefore reversed the Hearing Officer's ruling that the Petitioners were in violation of sections 30-1543(a) and (c).

The Petitioners then filed a petition for writ of certiorari in this Court, seeking to quash that part of the circuit court's decision finding them in violation of section 30-681(b)(2).

II.    ANALYSIS

"The standard governing the disposition of a petition for second-tier certiorari in a district court is narrow: '[T]he district court must determine whether the decision of the circuit court . . . is a departure from the essential requirements of law resulting in a miscarriage of justice.'" Dep't of Highway Safety & Motor Vehicles v. Fernandez, 114 So. 3d 266, 269-70 (Fla. 3d DCA 2013) (quoting Nader v. Fla. Dep't of Highway Safety and Motor Vehicles, 87 So. 3d 712, 725 (Fla. 2012)).  A district court's analysis of whether a circuit court's decision constitutes a departure from the essential requirements of the law is limited to whether the parties were afforded procedural due process and whether the circuit court applied the correct law.  See Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995).  District courts should consider the seriousness of the error involved, only granting certiorari in the "few extreme cases where the appellate court's decision is so erroneous that justice requires that it be corrected." Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1094 (Fla. 2010) (quoting Combs v. State, 436 So. 2d 93, 95 (Fla. 1983)).

Because a second-tier certiorari proceeding "cannot be used to grant a second appeal to correct the existence of mere legal error," the Florida Supreme Court has cautioned that "a district court should exercise its discretion to grant review only when the lower tribunal has violated a clearly established principle of law resulting in a miscarriage of justice." Custer, 62 So. 3d at 1092-93; accord Sutton v. State, 975 So. 2d 1073, 1081 (Fla. 2008) (stating that "[a] departure from the essential requirements of the law is not mere legal error, but instead, involves a 'gross miscarriage of justice'").

Where the issue before the circuit court involves statutory construction, a writ of certiorari may be appropriate where the circuit court does not apply the plain and unambiguous language of the relevant statute, resulting in an egregious error. See Nader, 87 So. 3d at 723 ("[A] district court may grant a writ of certiorari after determining that the decision is in conflict with the relevant statute, so long as the legal error is also 'sufficiently egregious or fundamental to fall within the limited scope' of certiorari jurisdiction." (quoting Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003))); see also Fernandez, 114 So. 3d at 272 (holding that circuit court's failure to apply statute according to its clear and unambiguous terms amounted to failure to apply clearly established law); Justice Admin. Comm'n v. Peterson, 989 So. 2d 663, 665 (Fla. 2d DCA 2008) ("When the circuit court does not apply the plain and unambiguous language of the relevant

8

statute, it departs from the essential requirements of law."); <u>Orange Cty. v. Lewis</u>, 859 So. 2d 526, 529 (Fla. 5th DCA 2003) (granting petition for certiorari where circuit court ignored plain language of Orange County Code).

Here, the Petitioners argue that the circuit court failed to properly apply the rules of statutory construction in its review of the Final Order.[4]  Specifically, the Petitioners assert that the circuit court failed to apply the rule of statutory construction that a specific statute covering a particular subject area controls over a more general statute.

Legislative intent is the polestar that guides a court's statutory construction analysis, and "[t]o discern legislative intent, a court must look first and foremost at the actual language used in the statute." <u>Larimore v. State</u>, 2 So. 3d 101, 106 (Fla. 2008).  "It is a fundamental principle of statutory construction that where the language of a statute is plain and unambiguous there is no occasion for judicial interpretation." <u>Forsythe v. Longboat Key Beach Erosion Control Dist.</u>, 604 So. 2d 452, 454 (Fla. 1992).  "The Legislature must be understood to mean what it has plainly expressed and this excludes construction.  The Legislative intent being plainly expressed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms." <u>Id.</u>

---

[4] Petitioners do not argue that the circuit court failed to afford them procedural due process.

9

(quoting Van Pelt v. Hilliard, 78 So. 693, 694-95 (Fla. 1918)); see also Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005) ("When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." (citation omitted)); Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) ("[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." (quoting A.R. Douglass, Inc. v. McRainey, 137 So. 157, 159 (1931))).

"In ascertaining the legislative intent, a court must consider the plain language of the statute, give effect to all statutory provisions, and construe related provisions in harmony with one another." See Hectman v. Nations Title Ins. of N.Y., 840 So. 2d 993, 996 (Fla. 2003); see also Forsythe, 604 So. 2d at 455 ("Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another."); Howarth v. City of De Land, 158 So. 294, 298 (1934) ("The courts, in construing a statute, must, if possible, avoid such construction as will place a particular statute in conflict with other apparently effective statutes covering the same general field.").

While the Petitioners are correct that an accepted rule of statutory construction provides that "a specific statute covering a particular subject area

always controls over a statute covering the same and other subjects in more general terms," McKendry v. State, 641 So. 2d 45, 46 (Fla. 1994), this rule applies when statutes are in *conflict* with each other. See Fla. Virtual Sch. v. K12, Inc., 148 So. 3d 97, 102 (Fla. 2014) ("When reconciling statutes that may appear to conflict, the rules of statutory construction provide that a specific statute will control over a general statute . . . ."); Palm Beach Cty. Canvassing Bd. v. Harris, 772 So. 2d 1273, 1287 (Fla. 2000) ("[W]here two statutory provisions are in conflict, the specific statute controls the general statute."); McKendry, 641 So. 2d at 46 (applying rule that more specific statute is considered an exception to the general statute where statutes contain conflicting provisions).

A comparison of the plain language of section 30-681(b)(2) and section 30-1543(c) indicates that the two sections are not in conflict with each other. Section 30-1543(c) addresses state and federal approval for "[a]ll development waterward of the mean high-water line," and requires approval by the U.S. Army Corps of Engineers and the Florida Department of Environmental Protection. Section 30-681(b)(2), in turn, addresses the Village's local permitting requirements, i.e, the requirement to obtain use permits for "[u]ses not specifically listed herein as a permitted or conditional." One section does not necessarily exclude the other, nor does one render the other meaningless. Giving effect to both sections and read in harmony with one another, the most obvious reading of the two sections is

11

that when land use pursuant to section 30-681(b)(2) involves development waterward of the mean high-water line, section 30-1543(c) requires that state and federal approval must *also* be obtained.

"If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended." Tropical Coach Line, Inc. v. Carter, 121 So. 2d 779, 782 (Fla. 1960). Here, both the Village and the Petitioners agree that the relevant sections of the Village Code are unambiguous. Accordingly, the circuit court was obligated to apply the plain language of the Village Code. See Forsythe, 604 So. 2d at 454; Daniels, 898 So. 2d at 64; Holly, 450 So. 2d at 219.

III.  CONCLUSION:

Because sections 30-681(b)(2) and 30-1543(c) of the Village Code do not conflict with each other, the circuit court was not required to apply the rule of statutory construction instructing that a more specific statute controls over a more general one in order to harmonize the two sections. The circuit court properly construed the Village Code in a manner consistent with its plain and unambiguous language. As the circuit applied the correct law and the Petitioners do not dispute that they were afforded procedural due process, we deny the petition for certiorari.[5]

_____

[5] The Petitioners also assert, in a one-sentence argument, that the circuit court failed to find that the notice of violation was defective as to the remedy for

12

Petition denied.

---

compliance under section 30-681(b)(2) because the notice did not request that the Petitioners apply for the required permits for the buoy system, but instead only mandated removal.  This Court, however, cannot consider the issue because it was not raised by the Petitioners in their brief before the circuit court.  See State Farm Fire & Cas. Ins. Co. v. Best Therapy Ctr., 69 So. 3d 1059, 1061 (Fla. 3d DCA 2011) (stating that review of decision rendered by the appellate division of circuit court is limited to issues raised in the circuit court appeal).