IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SURF WORKS, L.L.C., and
NADIME KARAN KOWKABANY,

      Petitioners,

v.

CITY OF JACKSONVILLE BEACH,

      Respondent.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-3312

Opinion filed November 8, 2017.

Petition for Writ of Certiorari – original jurisdiction.

Paul M. Harden and Zachary Miller, Jacksonville; Steve Diebenow of Driver, McAfee, Peek & Hawthorne, Jacksonville, for Petitioners.

Susan Smith Erdelyi of Marks Gray, P.A., Jacksonville, for Respondent.

B.L. THOMAS, C.J.

      Petitioners Surf Works, L.L.C. and Nadime Karan Kowkabany petition this court for a writ of certiorari to quash the circuit court's decision upholding Respondent Jacksonville Beach's denial of Petitioners' application for rezoning. Because the circuit court applied the incorrect law, which departed from the essential requirements of the law, we grant the petition.

Background

In 2014, Petitioners filed a rezoning application seeking to rezone the classification of property in Jacksonville Beach from Central Business District to Redevelopment District ("RD"). The property was the site of Mango's Beach Bar and Grille, which Petitioners intended to redevelop into a mixed-use facility of office and retail space, with the majority of the proposed development devoted to a two-story bar named "Surfer – the Bar." Petitioners envisioned their proposed bar as becoming a destination for surfers and surf enthusiasts.

Petitioners' application for rezoning specifically stated their intention to locate the proposed bar within 500 feet of two other alcoholic beverage establishments, contrary to Respondent's Land Development Code ("Code"). (Mango's Bar had been grandfathered into the location.) Petitioners acknowledged that their proposed bar was inconsistent with the provisions of section 34-407 of the Code, which imposed additional requirements for outdoor bars and restaurants, but noted their proposed deviations were permissible under the flexible RD zoning process. Under the Code, the *expressed purpose* of this RD zoning district is to

> achieve a diversity of uses in a desirable environment through the application of *flexible* land development standards and to *foster creative design* and planning practices in the Jacksonville Beach Downtown Redevelopment Area *in order to encourage economic vitality and redevelopment* pursuant to the objectives of the Jacksonville Beach Community Redevelopment Plan.

Jacksonville Beach, Fla., Code § 34-347(a) (2015) (emphasis added).

2

This section of the Code outlines the procedure that must be followed to receive an RD zoning district classification. Specifically, it requires land to "receive approval of a preliminary development plan pursuant to the procedures and standards" of section 34-347(c). Jacksonville Beach, Fla., Code § 34-347(c)(1). To obtain this approval, an applicant must submit a proposed preliminary development plan to Respondent's Planning and Development Director. Once the application is determined to be sufficient, it is further reviewed by Respondent's Redevelopment Agency and Planning Commission, which recommends either approval, approval with conditions, or denial. The application and recommendations are then forwarded to the city council for a public hearing for final action on the preliminary development plan "*pursuant to the standards in section 34-347(c)(3)(i.).*" Jacksonville Beach, Fla., Code § 34-347(c)(3)(h.)(2.) (emphasis added).

If the city council votes to approve the preliminary development plan, "[i]ssuance of a development order for [the] preliminary development plan for an RD zoning district classification *shall constitute an amendment* to the official zoning map to RD zoning district." Jacksonville Beach, Fla., Code § 34-347(c)(3)(k.) (emphasis added).

Petitioners' application was reviewed once by Respondent's Planning Commission and twice by Respondent's Community Redevelopment Agency

3

under section 34-347(c) of the Code, and both bodies recommended approval of the application.[1]  There was *no indication* that any additional provisions of the Code were factored into the review.  Also significant here, Respondent's Senior Planner noted that while Petitioners' proposed development departed from the conventional zoning criteria of sections 34-393 and 34-407(b), those "characteristics [we]re allowed to be addressed and modified from the normal standards as part of the RD zoning process, which was created to allow flexibility from traditional standards in an effort to encourage redevelopment activity in the Downtown Redevelopment Area."  Memoranda from Bill Mann, Senior Planner, Dep't of Planning & Dev., to George D. Forbes, City Manager (July 7, 2014; Sept. 9, 2014).

Petitioners first presented their rezoning application to the city council on July 21, 2014.  The mayor announced that Petitioners' application would be considered pursuant to the standards of section 34-211 of the Code, which governed zoning atlas and code amendments.  One of the standards contained in section 34-211(c) required the city council to consider whether the proposed rezoning conflicted with any other portion of the Code.  Jacksonville Beach, Fla., Code § 34-211(c)(2) (2016).  During the hearing, concerns were raised by citizens,

---

[1] The Planning Commission voted to conditionally approve the application with the conditions that 1) there be no live or amplified music in the outdoor bar areas, and 2) Petitioners augment the second floor of the bar with architectural screen walls.

4

the mayor, and city council members about Petitioners' application and its inconsistencies with the Code. Petitioners were given a chance to work on the comments received from the city council, and another hearing was scheduled.

At the second hearing, the mayor again announced that Petitioners' application would be considered pursuant to the standards contained in section 34-211. Petitioners asserted that significant efforts had been made to improve the application. Following substantial public comment, the city council ultimately voted to deny Petitioners' rezoning application, citing concerns that the location was unsuitable. The city council stated that Petitioners' application was denied for four reasons, including: 1) its conflict with section 34-393, which requires a 500-foot separation between alcoholic beverage establishments; and 2) its conflict with section 34-407(b), which limits the amount of outdoor seating allowable for outdoor restaurants and bars. Both of these grounds were acknowledged in Petitioners' application, which, as noted above, sought approval under section 34-347(c)(3)(i.).

Petitioners then filed a petition in the circuit court seeking certiorari review of the city council's decision. Petitioners alleged that the city council's decision was not supported by competent, substantial evidence and that the city council applied the wrong provisions of the Code in denying the application, and as such, departed from the essential requirements of law. Petitioners argued that their

5

application was subject to the requirements of section 34-347 of the Code, which governs the RD zoning district.

Section 34-347(c)(3)(h.)(2.) provides: "After the public hearing, the city council shall approve, approve with conditions, or deny the application pursuant to the standards in *section 34-347(c)(3)(i).*" Jacksonville Beach, Fla., Code § 34-347(c)(3)(h.)(2.) (emphasis added). Petitioners argue here, as below, that this provision restricted the city council's consideration solely to the criteria of section 34-347(c)(3)(i.), and because sections 34-393 and 34-407 were not expressly included in that criteria, the city council applied the incorrect law in relying on Petitioners' noncompliance with those sections as a basis for denying their application.

In denying the petition below, the circuit court ruled that Petitioners' RD zoning district application was governed by sections 34-201 through 34-211. As stated above, one of the factors listed in section 34-211(c) requires the city council to consider whether a proposed zoning amendment conflicts with any portion of the Code. Accordingly, the court ruled that the city council's denial of Petitioners' application based on Petitioners' noncompliance with sections 34-393 and 34-407 was supported by competent, substantial evidence, despite the fact that compliance with sections 34-393 and 34-407 was not among the criteria enumerated by section 34-347(c)(3)(i.). The court found that none of the other reasons the city council

6

gave for denying the application were supported by competent, substantial evidence.

Analysis

District courts should grant second-tier certiorari "only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1092 (Fla. 2010) (quoting *Combs v. State*, 436 So. 2d 93, 96 (Fla. 1983)). Under this standard, the mere existence of legal error is insufficient to invoke the district court's certiorari jurisdiction. *Combs*, 436 So. 2d at 95. Likewise, "a misapplication or an erroneous interpretation of the correct law does not rise to the level of a violation of a clearly established principle of law." *State, Dep't of Highway Safety v. Edenfield*, 58 So. 3d 904, 906 (Fla. 1st DCA 2011). Certiorari relief cannot be granted when the established law provides no controlling precedent, "because '[w]ithout such controlling precedent, [a district court] cannot conclude that [a circuit court] violated a clearly establish[ed] principle of law.'" *Id.* (quoting *Ivey v. Allstate Ins. Co.*, 775 So. 2d 679, 682 (Fla. 2000)).

District courts must be cautious and prudent when exercising their jurisdiction to grant relief by writ of certiorari. *Ivey v. Allstate Ins. Co.,* 774 So. 2d 679, 682-83 (Fla. 2000). Only where the circuit court failed to afford procedural due process or failed to apply the correct law may such relief be granted by the

7

district court: "The inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law. . . . [T]hese two components are merely expressions of ways in which the circuit court decision may have departed from the essential requirements of the law." *Haines City Cmty. Dev. v. Heggs,* 658 So. 2d 523, 530 (Fla. 1995). In *Heggs,* the supreme court cited to a "critic," William A. Haddad, who commented that, in invoking its certiorari jurisdiction, a district court must consider the "gravity of the error and the adequacy of other relief." *Id.* at 531 n.14 (citing William A. Haddad, *The Common Law Writ of Certiorari in Florida,* 29 U. Fla. L. Rev. 207, 228 (1977)). Mr. Haddad continued to write that a district court can properly exercise this jurisdiction "to correct grievous errors that, for a variety of reasons, are not otherwise effectively subject to review." *Id.* We hold that when the circuit court applied the incorrect law to uphold the city council's decision to apply the provisions of section 34-211, rather than the provisions of section 34-347(c), such an error occurred here. This error resulted in a miscarriage of justice which departed from the essential requirements of law and deprived Petitioners of the lawful use of their property. When a party complies with the law in seeking to utilize the highest and best use of their property, and the governing authority refuses to apply the correct law to thwart the citizen so as to deprive him of the

8

ability and right to enjoy the *lawful* highest and best use of his land, a miscarriage of justice has occurred.

At issue is which sections of the Code were applicable to Petitioners' application seeking to rezone property to the RD zoning district. Petitioners argued below that section 34-347(c)(3)(i.) contained the applicable criteria; however, the circuit court found that the provisions of section 34-347 did not address rezonings, and Petitioners' application was required to comply with the sections that did govern zoning amendments, namely, sections 34-201 through 34-211. On appeal, Petitioners argue that this finding departed from the essential requirements of law for various reasons. Pertinent to this court's analysis is Petitioners' argument that the circuit court ignored the plain meaning of the provisions of section 34-347, and thereby applied the incorrect law. *See Rinker Materials Corp. v. City of N. Miami*, 286 So. 2d 552, 553 (Fla. 1973) (holding that the circuit court's failure to apply the plain and ordinary meaning of the language of the ordinance was "a clear basis of conflict").

City ordinances, like the Code sections at issue here, are subject to the same rules of construction as state statutes. *Great Outdoors Trading, Inc. v. City of High Springs*, 550 So. 2d 483, 485 (Fla. 1st DCA 1989) (citing *Rinker*, 286 So. 2d at 553). As with statutes, the first step when construing ordinances is "to discern and to give effect to the legislative will, since 'intent is the essence of the law.'" *Great*

9

*Outdoors Trading, Inc.*, 550 So. 2d at 485 (quoting *City of Boca Raton v. Gidman*, 440 So. 2d 1277, 1281 (Fla. 1983)). Intent is derived primarily from a statute's text; therefore, "'to discern that intent [courts] must look first to the language of the statute and its plain meaning.'" *Hill v. Davis*, 70 So. 3d 572, 575 (Fla. 2011) (quoting *Fla. Dep't of Children & Family Servs. v. P.E.*, 14 So. 3d 228, 234 (Fla. 2009)). The words of the ordinances must be given their "plain and ordinary meaning," and "courts generally may not insert words or phrases in municipal ordinances in order to express intentions which do not appear, unless it is clear the omission was inadvertent . . . ." *Rinker Materials Corp.*, 286 So. 2d at 553-54. Under the plain meaning rule, which is regarded as "'the cardinal rule of statutory construction,'" if a court finds that the language of the statute is unambiguous, it should not resort to further construction or interpretation. *Smith v. Crawford*, 645 So. 2d 513, 522 (Fla. 1st DCA 1994) (quoting *Weber v. Dobbins*, 616 So. 2d 956, 958 (Fla. 1993)). Furthermore, to effectuate legislative intent, "[i]t is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992) (emphasis in original).

Section 34-347, which specifically addresses RD zoning district applications, in no way requires that an application for a preliminary development plan for an RD zoning district classification also comply with the standards of

10

section 34-211, but the circuit court found that Petitioners' compliance with this section was required by the plain language of an unrelated section of the Code. The circuit court's reasoning was that the plain language of section 34-347 did not address zoning amendments, while the plain language of sections 34-201 through 34-211 did; therefore, because Petitioners were seeking to rezone their land to the RD zoning district, their application was required to comply with sections 34-201 through 34-211. We hold that the circuit court overlooked the plain language of the specific and controlling provisions of section 34-347, and therefore applied the incorrect law. *See Rinker Materials Corp.*, 286 So. 2d at 553-54 (holding that the district court failed "to follow established decisional rules of statutory construction" when it failed to give to the ordinance "the plain and ordinary meaning of the words employed by the legislative body").

Contrary to the circuit court's ruling, section 34-347 does address zoning amendments. Section 34-347(c)(1) states that land must receive approval of a preliminary development plan *before* receiving an RD zoning district classification, and then prescribes the procedure to follow to obtain approval of the preliminary development plan. Even more explicit is subsection 34-347(c)(3)(k.), which provides: "Issuance of a development order for a preliminary development plan for an RD zoning district classification *shall constitute an amendment to the official zoning map to RD zoning district*." Jacksonville Beach, Fla., Code § 34-

11

347(c)(3)(k.) (emphasis added). It is plain from the unambiguous language of these provisions that section 34-347 was precisely intended to encompass situations such as this where the applicant is seeking an RD zoning designation for land that is not already classified as RD. This conclusion is supported by the actions of Respondent's planning staff, who reviewed Petitioners' application pursuant to the procedures and standards prescribed by subsection 34-347(c), and importantly, did *not* follow the procedure contained in sections 34-201 through 34-211. And nor would they: It would be nonsensical to provide a detailed alternative zoning scheme designed to facilitate "economic vitality and redevelopment," and then deny applications that met this criteria, solely because the application did not meet the criteria of a separate regulatory scheme applicable only to applications that did not seek approval under the RD alternative zoning process.

Additionally, the circuit court erroneously applied the statutory construction principle of *in pari materia* to find that the standards in section 34-211(c) applied to Petitioners' application. The statutory construction rule of *in pari materia* requires provisions relating to the same subject to "'be construed together and compared with each other;'" however, "[i]n contrast to the rule permitting *in pari materia* construction . . . is the maxim instructing that a specific statute controls over a general statute covering the same subject matter." *Cone v. State, Dep't of*

12

*Health*, 886 So. 2d 1007, 1010, 1012 (Fla. 1st DCA 2004) (quoting *Smith*, 645 So. 2d at 522). Here, sections 34-201 through 34-211 provide a process for amending the boundaries of the official zoning atlas, and section 34-211(c) provides the standards that must be considered by the city council when deciding whether to adopt the amendment. Jacksonville Beach, Fla., Code §§ 34-201, 34-211(c). Meanwhile, section 34-347(c) provides a process for obtaining an RD zoning district classification and section 34-347(c)(3)(i.) provides the applicable standards. Therefore, while these sections all address rezonings, only the specific procedures in section 34-347 apply when the applicant is seeking an RD zoning district classification, and for this reason the RD-specific standards in section 34-347(c)(3)(i.) control over the general standards contained in section 34-211(c).

For the foregoing reasons, we hold that the circuit court's order failed to apply the correct law when it found that Petitioners' application was required to comply with the standards in section 34-211(c) rather than those contained in section 34-347(c)(3)(i.). Accordingly, we GRANT the petition for writ of certiorari and QUASH the circuit court's decision denying certiorari relief.

RAY, J., CONCURS; KELSEY, J., DISSENTS WITH OPINION.

13

KELSEY, J., dissenting.

I would deny the petition because the trial court applied the correct law. That is the only legal issue presented over which we have jurisdiction on second-tier certiorari review. *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 530 (Fla. 1995) (holding that standard of review on second-tier certiorari is whether the lower tribunal "applied the correct law," synonymous with "observing the essential requirements of law").

**The Code.**

The first "correct law" is the Jacksonville Beach Land Development Code.[2] The Code encompasses numerous articles, divisions, and sections related to various aspects of land development, including Article VII, Division 2, Section 34-347, entitled "Redevelopment District: RD." The standards of section 34-347(c)(3)(i) include the adequacy and appropriateness of the land area; compatibility with other existing or proposed uses in the general vicinity usage; and consistency of lot area, setbacks, parking, signage, landscaping, and environmental factors with the Jacksonville Beach Community Redevelopment Plan. The next subsection, 34-347(c)(3)(j), expressly authorizes the city council to

---

[2] The "correct law" could also include the Jacksonville Beach Comprehensive Plan, Community Redevelopment Plan, and 2007 Vision Plan, but the parties do not raise those documents as among those that as a matter of law could make a difference here.

14

"impose such conditions . . . that are necessary to accomplish the purposes of this section, this Code, and the comprehensive plan."

The Code as a whole relates to land development, and includes numerous specific provisions that on their face could apply to the proposal at issue here. The Code sets forth generally applicable rules of construction and definitions. Article VI on Development Review Procedures applies "to every application for a development permit," and a "development permit" is defined to include amendments to the RD zoning district. Other Code provisions outside of section 34-347 also apply to all zoning districts and all action by the City Council.

**Rules of Construction.**

The "correct law" is also the law governing interpretation of the Code. The Code is a municipal ordinance, and as such is subject to the general rules of statutory construction. *Great Outdoors Trading, Inc. v. City of High Springs*, 550 So. 2d 483, 485 (Fla. 1st DCA 1989). The trial court was required to construe all parts of the Code together "in order to achieve a consistent whole." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992). "Where possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another." *Id.*

**Trial Court's Application of Correct Law.**

The trial court was confronted with statutory construction of a local government ordinance. The two narrow legal issues before the trial court were (1) whether section 34-347 *mandates* that the Jacksonville Beach City Council approve rezoning requests for bars that violate other sections of the Code by being located within 500 feet of other bars and exceeding outdoor seating limitations; and (2) whether section 34-347 *prohibits* the Jacksonville Beach City Council from considering any other provisions of the Code when deciding whether to grant a request to rezone a property to the Redevelopment District category. To resolve those legal issues required the trial court to construe section 34-347 in light of its legal context within the entire Code. It is impossible to decide how section 34-347 interacts with the remainder of the Code without looking at the Code in its entirety. The "correct law" to be reviewed is the entire Code, construed according to governing principles of statutory construction. The trial court applied the correct law, and therefore we should deny the petition for writ of certiorari.

This case is analogous to another recent local government land use decision in which the Third District denied certiorari. In *DMB Inv. Tr. v. Islamorada, Village of Islands*, 225 So. 3d 312, 314 (Fla. 3d DCA 2017), the underlying merits issue was whether a property owner was required to obtain a permit from the Village before installing a swim buoy system, in addition to obtaining

authorizations from both the Florida Department of Environmental Protection and the United States Army Corps of Engineers. The property owner argued that one specific section of the Islamorada, Village of Islands Code of Ordinances, requiring approval only from the state and federal bodies, prevailed over more general sections of the Code governing shoreline environmental and development criteria and land use in general. *Id.* at 315. In pertinent part, the circuit court affirmed the Village's interpretation of a general Code provision as requiring a local-government permit for the swim buoy system in addition to state and federal approval. *Id.* at 316.

On second-tier certiorari review, the Third District held that the circuit court correctly applied the law of statutory construction and properly analyzed both provisions of the Village Code to determine that they were not in conflict with one another, but rather could be harmonized. *Id.* at 318. Of particular relevance here, the Third District noted that the court was required to "consider the plain language of the statute, give effect to all statutory provisions, and construe related provisions in harmony with one another." *Id.* at 317 (quoting *Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003)).

Similarly in this Jacksonville Beach case, the trial court on appeal expressly held that "[r]elevant portions of the ordinance code applicable in this case constitute the correct law." The trial court carefully reviewed as a whole the

17

various provisions of the Land Development Code on which the parties relied, and arrived at a harmonizing construction consistent with the general rules of statutory interpretation. The trial court found competent, substantial evidence in support of the City Council's decision (an issue beyond the scope of our second-tier certiorari review). The trial court applied the correct law, ending our analysis.

**The Restrictiveness of the Writ.**

Even if we were to conclude that the trial court applied the wrong law or applied the correct law incorrectly, we should deny certiorari because of the extremely narrow scope of the writ. Mere legal error is insufficient to invoke our certiorari jurisdiction. *Combs v. State*, 436 So. 2d 93, 95 (Fla. 1983). We should grant second-tier certiorari "only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." *State, Dep't of High. Saf. & Motor Veh. v. Edenfield*, 58 So. 3d 904, 906 (Fla. 1st DCA 2011) (quoting *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1092 (Fla. 2010)). An overly narrow definition of what constitutes the "correct law" in second-tier certiorari analysis would expand the writ inappropriately. In this case, a local governing body vested with wide discretion over a local land-use decision exercised that discretion in a manner supported by the evidence and the law. The trial court applied appropriate rules of construction and scope of review to the narrow issues presented. It is not up to us to decide how a parcel of land in

18

Jacksonville Beach should be used. Petitioners are free to address the factors that concerned the public and the City Council, and apply again, if they wish to do so. This is not a miscarriage of justice. Certiorari should be denied.